TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00107-CR






Bobby Barrett, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT

NO. 57417, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 The jury convicted appellant Bobby Barrett of the offense of cocaine possession. See
Tex. Health & Safety Code Ann. § 481.102(3)(D) (West Supp. 2006), § 481.115(a) (West 2003). 
Punishment was assessed at 20 years' imprisonment and a $5,000 fine. In a single issue on appeal,
Barrett challenges the factual sufficiency of the evidence. We affirm.


BACKGROUND

 The jury heard evidence that Officer John Bowman of the Killeen Police Department
arrived at the Economy Motel in the early morning hours of July 19, 2004, searching for a stolen
vehicle. Bowman testified that the motel was a "notorious area for criminal activity," including
prostitution, drug activity, and auto theft. Directly outside of room 129, Bowman located the vehicle
that had been reported stolen. The car was occupied by two individuals, Christopher Leblue and
Jenieve Rayes. Bowman asked them if they knew the whereabouts of Kerwin "Shawn" Hardaway,
the man suspected of stealing the vehicle. The occupants acknowledged that Hardaway was the
driver of the vehicle and that he was at the motel, but they claimed to not know the room in which
Hardaway was staying. Once Leblue and Rayes were detained by other officers, Bowman and
Officer David Cole began knocking on the doors of the motel in an attempt to find the suspect. 

 After approximately 20 to 30 minutes, Officer Pamela Asmus, who was one of the
officers detaining Leblue and Rayes, informed Bowman and Cole that Hardaway might be in room
130. (1) The officers went to the room and knocked repeatedly on the door. Bowman testified that
there was no response but that, at one point, the officers saw the curtain covering the room's window
move, indicating to him that there was activity inside. The officers then heard a loud "bang" that
sounded like it came from the back part of the room. Both officers thought that it sounded like the
air conditioning unit was being "punched out" of the wall (which, Bowman testified, was a very
common way by which people were known to flee the police at the Economy Motel). Cole then ran
to the back of the building while Bowman remained at the door. Cole discovered that the air
conditioning unit in the back wall was intact. 

 Officer Bowman testified that, while Cole was gone, Barrett opened the door, backed
up, and seated himself on the bed. Bowman entered the room and asked Barrett where Hardaway
was. Instead of responding, Barrett "just sat there." Bowman then saw a person lying on the floor,
ordered him to get up, and identified the person as Hardaway. (2) Bowman proceeded to handcuff
Hardaway "to detain him for the stolen vehicle." 

 Bowman testified that, after he had cuffed Hardaway, Barrett was still sitting on the
bed, leaning against the headboard, and "staring off in the bathroom." In fact, according to Bowman,
Barrett was "paying more attention to that bathroom than he was to me." When asked if Barrett was
"staring it down," Bowman testified, "Off and on, yes, sir. He'd stare and make eye
contact and stare back." 

 Barrett's behavior "really kind of spooked" Bowman, who was concerned that
someone might be hiding in the bathroom. Bowman asked Barrett if anyone was inside the
bathroom. Bowman testified that Barrett told him, "There's nobody else here." Bowman did not
believe Barrett, however, because Barrett "was staring too hard." Bowman testified that he was
"very uncomfortable." After Bowman gave custody of Hardaway to Officer Asmus, Bowman
decided to enter the bathroom to investigate.

 Once inside, Bowman determined that no one was in the bathroom. However,
Bowman testified that he found what appeared to him to be two rocks of crack cocaine in plain sight
on the counter by the sink. On the floor in front of the sink, Bowman observed what appeared to be
another rock of crack cocaine that had been stepped on and crushed. Furthermore, when Bowman
bent down to test the crushed material on the floor, he observed a paper towel stuffed underneath the
sink between some pipes and the wall. Bowman testified that additional rocks of what appeared to
be crack cocaine were found inside the towel. Subsequent testing of the contraband recovered at the
motel revealed that it contained a total amount of slightly over six grams of cocaine.

 Bowman also testified that the bathroom door was damaged, and that, based on the
nature of damage, he deduced that the loud bang he and Cole previously heard had come from the
door hitting the television set. Bowman remarked that he thought the door being slammed into the
television had been "a panic hit." When asked if he thought the damage was from "someone trying
to get in that bathroom real quick," Bowman testified, "Yes, sir."

 The jury also heard testimony from narcotics detective Anthony Lourence, who
assisted in the investigation once the police determined that drugs were involved. Lourence
explained that rocks of crack cocaine were usually sold using $20.00, $10.00, and $5.00 bills. 
Lourence testified that when Barrett was arrested, Barrett had $221.00 on his person, in the form of
eight $20.00 bills, one $10.00 bill, eight $5.00 bills, and eleven $1.00 bills. No similar amount of
money was found on Hardaway.

 Lourence also testified that it was common for crack dealers to use hotels and motels
in downtown Killeen for their transactions, but that the dealers did not typically register as guests. 
Instead, in an effort to conceal their presence, they arranged for third parties to rent rooms for them. 

 During the investigation, the officers spoke with the motel manager and determined
that a person named David Barry had rented room 130. The officers then spoke with Barry, who was
staying in room 145. Bowman testified that Barry told him that he had rented room 130 for a dark-skinned black male who matched Barrett's description. However, no key to the room was
found on Barrett. 

 The police determined that Barrett resided at a house two or three blocks from the
motel. The police found no clothing, toiletries, or personal effects in room 130. Lourence testified
that it was not uncommon for motel rooms to be rented for the sole purpose of selling or smoking
crack cocaine. Lourence also testified that the rooms in the motel were small and that anyone inside
the room would have remained within about ten feet of the bathroom where the crack
cocaine was found.

 The jury also heard testimony from Hardaway, who testified for the defense. 
Hardaway testified that he entered the room to use the telephone and had only been in there for about
15 minutes when the police arrived. Hardaway also testified that he did not see Barrett with any
cocaine while he was present and that no one else entered or left the room while he was there. 
Furthermore, Hardaway stated that Barrett was already in the motel room when he arrived. 
Hardaway also denied possessing the cocaine himself and denied being aware of its
presence in the room. (3)

 The jury convicted Barrett of possession of cocaine in an amount of four grams or
more but less than 200 grams. This appeal followed. 


DISCUSSION

 In his sole issue on appeal, Barrett contests the factual sufficiency of the evidence
supporting his conviction. Specifically, Barrett contends that there are insufficient affirmative links
connecting him to the contraband. 

 In a factual sufficiency review, we view the evidence in a neutral light and ask
whether a jury was rationally justified in finding guilt beyond a reasonable doubt. See
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then determine whether the
evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or
whether the verdict is against the great weight and preponderance of the conflicting evidence. Id.
at 415. We will not reverse a case on a factual sufficiency challenge unless we can say, with some
objective basis in the record, that the great weight and preponderance of the evidence contradicts the
jury's verdict. Id. at 417.

 In a prosecution for possession of a controlled substance, the State must prove that
(1) the accused exercised control, management, or care over the substance; and (2) the accused knew
the matter possessed was contraband. Evans v. State, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).
Regardless of whether the evidence is direct or circumstantial, it must establish that the defendant's
connection with the drug was more than fortuitous. Id. This is the so-called "affirmative links" rule
that protects the innocent bystander--a relative, friend, or stranger to the actual possessor--from
conviction based merely on his fortuitous proximity to someone else's drugs. Id. at 161-62. Mere
presence at the location where drugs are found is thus insufficient, by itself, to establish actual care,
custody, or control of those drugs. Id. at 162. However, presence or proximity, when combined with
other evidence, either direct or circumstantial (i.e., "links"), may well be sufficient to establish that
element beyond a reasonable doubt. Id. It is not the number of links that is dispositive, but rather
the logical force of all of the evidence, direct and circumstantial. Id.

 A non-exclusive list of possible links that Texas courts have recognized as sufficient,
either singly or in combination, to establish a person's possession of contraband include: (1) the
defendant's presence when a search is conducted; (2) whether the contraband was in plain view; 
(3) the defendant's proximity to and the accessibility of the contraband; (4) whether the defendant
was under the influence of illegal drugs when arrested; (5) whether the defendant possessed other
contraband when arrested; (6) whether the defendant made incriminating statements when arrested; 
(7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures;
(9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia
were present; (11) whether the defendant owned or had the right to possess the place where the
contraband was found; (12) whether the place where the contraband was found was enclosed; 
(13) whether the defendant was found with a large amount of cash; and (14) whether the conduct
of the defendant indicated a consciousness of guilt. Id. at 162 n.12.

 In deciding whether the evidence sufficiently establishes an affirmative link between
the accused and the contraband, the trier of fact is the exclusive judge of the credibility of the
witnesses and the weight to be given to their testimony. Poindexter v. State, 153 S.W.3d 402, 406
(Tex. Crim. App. 2005). Ultimately, the question of whether the evidence is sufficient to
affirmatively link the accused to the contraband must be answered on a case-by-case basis.
Whitworth v. State, 808 S.W.2d 566, 569 (Tex. App.--Austin 1991, pet. ref'd).

 In this case, the trier of fact could have reasonably inferred from the following
evidence that Barrett was not in possession of the cocaine:


There was no contraband found on Barrett's person, and Hardaway testified that he
did not see Barrett with any cocaine while he was present in the room. From this
evidence the fact-finder could have reasonably inferred that the contraband did not
belong to Barrett. 


Barrett made no incriminating statements about the contraband and did not attempt
to flee the motel room. In fact, Barrett opened the door, allowing Officer Bowman
entry into the room. From this evidence the fact-finder could have reasonably
inferred that Barrett was unaware of the contraband.


The room had not been rented in Barrett's name and the key to the room was not
found on Barrett's person. From this evidence the fact-finder could have reasonably
inferred that the contraband belonged to someone else.


There was no odor of contraband present in the room and there was no indication that
Barrett was under the influence of a controlled substance. From this evidence the
fact-finder could have reasonably inferred that Barrett was not using the contraband.


Hardaway was lying on the floor of the room while Barrett was sitting on the bed in
plain view. From this evidence the fact-finder could have reasonably inferred that
Hardaway was the guilty party and was trying to conceal his presence in the room
while Barrett was innocent and had nothing to hide.


 On the other hand, the trier of fact could have reasonably inferred from the following
evidence that Barrett was in possession of the cocaine: 


Barrett was present in the room when the officers arrived. 


Hardaway testified that Barrett was alone in the room when he arrived and that no
one else entered or left the room while he was there. From this testimony the fact-finder could have reasonably inferred that Hardaway and Barrett were the only two
individuals who could have been in possession of the contraband.


Officer Bowman testified that the loud "bang" heard by the officers was the
bathroom door hitting the television set. From this testimony the fact-finder could
have reasonably inferred that someone was trying to enter the bathroom quickly to
dispose of or hide the contraband.


Bowman testified that Barrett was looking at the bathroom in a manner that
"spooked" Bowman. From this testimony the fact-finder could have reasonably
inferred that Barrett was concerned about Bowman entering the bathroom and
discovering the contraband.


Some of the crack cocaine was found in plain view on the counter in the bathroom. 
From this evidence the fact-finder could have reasonably inferred that Barrett must
have had knowledge of the contraband's presence in the bathroom.


Additional crack cocaine was found crudely hidden underneath the sink or crushed
on the floor. The fact-finder could have reasonably inferred that this was evidence
of a "panicked" attempt to hide the contraband.


Bowman testified that Barry told him that he had rented the room for a person
matching Barrett's description. From this testimony the fact-finder could have
reasonably inferred that the person for whom Barry had rented the room was Barrett.


Barrett lived only two or three blocks away from the motel. From this evidence the
fact-finder could have reasonably inferred that Barrett did not need a place to stay and
that, therefore, his presence in the motel room was, at the very least, suspicious.


Officer Lourance testified about the lack of clothing, toiletries, and personal effects
in the room. From this evidence the fact-finder could have reasonably inferred that
Barrett was in the room for the purpose of either smoking or selling the contraband.


The amount of money in Barrett's possession was in denominations consistent with
the denominations in which crack cocaine is usually sold. No similar amount of
money was found in Hardaway's possession. From this evidence the fact-finder
could have reasonably inferred that Hardaway had purchased the cocaine from
Barrett. 


Barrett did not open the door immediately, but only after the officers had knocked
repeatedly. From this evidence the fact-finder could have reasonably inferred that
Barrett was taking time to conceal the contraband prior to opening the door.


The motel room was a small enclosed space, and Officer Lourence testified that
Barrett could not have been more than ten feet away from the contraband at all times
while he was in the room. From this evidence the fact-finder could have reasonably
inferred that Barrett had easy access to the contraband. 


 Thus, the jury was presented with conflicting evidence, some of which supported the
State's theory that Barrett possessed the drugs and some of which supported the defense's theory that
Barrett did not. Reconciliation of any conflicts in the evidence is within the exclusive province of
the jury. Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Considering the above
evidence in a neutral light, we do not believe the jury's resolution of the facts in favor of the State
was against the great weight and preponderance of the evidence. See Watson, 204 S.W.3d at 417. 
We overrule Barrett's sole issue on appeal.


CONCLUSION

 Having overruled Barrett's issue on appeal, we affirm the judgment of
the district court.

 ____________________________________

 Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: June 21, 2007

Do Not Publish 
1. It is unclear from the record whether Leblue or Rayes gave Asmus this information. 
2. It is unclear from the record how Officer Bowman identified Hardaway in light of the fact
that Bowman had earlier testified that he did not know Hardaway prior to the date in question.
3. Hardaway pleaded guilty to cocaine possession. He claimed that he did so only to take
advantage of the terms of the plea bargain.