COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

                                               NO.
02-09-00112-CR

 

 

TERRANCE
FORD                                                                             APPELLANT

 

                                                             V.

 

THE
STATE OF TEXAS                                                                             STATE

 

 

                                                       ------------

 

                FROM THE 16TH DISTRICT COURT OF
DENTON COUNTY

 

                                                       ------------

 

                                  MEMORANDUM OPINION[1] ON 

APPELLANT=S PETITION FOR DISCRETIONARY REVIEW

 

                                                       ------------

Pursuant to rule of appellate procedure 50, we have
reconsidered our previous opinion upon reviewing Appellant Terrance Ford=s petition for
discretionary review.[2]  We withdraw our July 15, 2010 opinion and
judgment and substitute the following.








A jury convicted Appellant of possession of a
controlled substance with intent to deliver and assessed his punishment at life
imprisonment.  The trial court sentenced
him accordingly.  In two points,
Appellant contends that the evidence is legally and factually insufficient to
support his conviction.  Specifically, he
contends that there is no evidence or insufficient evidence that he possessed
the drugs.  Because we hold that the
evidence is sufficient to support Appellant=s conviction, we
affirm the trial court=s judgment.

The arresting officer, DPS Trooper Woody Gosser,
testified that he stopped a car for speeding on I-35 in Denton County,
Texas.  The car was traveling seventy
miles per hour in a sixty-five mile-per-hour zone.  Gosser explained that in drug interdiction,
law enforcement officers look for cars traveling under the speed limit or those
traveling Ajust over the posted speed limit@ because
typically, persons transporting large amounts of narcotics are not going to
travel at a speed that is much more than the speed limit.








The car=s windows,
excluding the windshield, were tinted black. 
As Gosser approached the car from the passenger side, he noticed that
the rear passenger window came down.  He
smelled burnt marijuana.  As he moved
closer to the rear passenger, the rear passenger window closed, and the driver=s window rolled
down.  When Gosser first walked up and
looked in the car, he noticed that three men were in the car, and he saw Ablunt@ material on the
floorboard and in the ashtray.  That is,
tobacco that appeared to have been taken out of a cigar was hanging out of the
ashtray, and the cellophane wrapper of a cigar was on the floorboard.  According to Gosser, the cellophane contained
enough tobacco to cover an entire cigar. 
After seeing the Ablunt@ material, Gosser
decided to search the car.

Gosser testified that Appellant was the rear passenger
and identified him at trial.  Gosser
testified that during the stop, Appellant was overly nervous and breathing
hard, his hands were shaking, he would not look at Gosser, and he did not want
anything to do with Gosser.

The driver was interviewed separately from his two
passengers for safety reasons, according to Gosser.  The driver told Gosser that Appellant had
flown from Oklahoma City to Houston for a wedding but that the driver and the
front seat passenger were using the driver=s girlfriend=s car to take
Appellant back to Oklahoma City in a quick turnaround trip.  The three men led Gosser to believe that they
were cousins.

Gosser testified that second- or third-party cars are
typical in the transport of large quantities of drugs because such vehicles
cannot be seized.  He also testified that
Houston is a source cityCAwhere large
quantities of narcotics are broke[n] down or shipped to and the people come in
and buy and distribute out to their destination@Cand that Oklahoma
City is actually becoming both a source and a destination point but that Ait=s usually just a
destination point.@ 
Finally, he testified that unreasonable travel plans are also something
that he is Atrained to look for@ in drug
interdiction, and he classified the three men=s stories as
unreasonable.








Gosser testified that in searching the car, he found
approximately eight cell phones.  They
were all around the passenger compartmentCthe front
passenger seat, the back seat, the center console, A[a]round the car,@ and Aeverywhere [the
officer] turned.@ 
Jeff Davis, supervisor of the Denton County Drug Enforcement Unit,
testified that the number of cell phones was significant 

[b]ecause normally what people do
that are involved in the drug trade, is they=ll haveCthis is basically my business phone, and your business
phone is your dirty phone.  Usually it=s a prepaid phone like Boost or
Verizon sells them.  You can buy them for
19.99, load them with minutes, and if you get in trouble you can throw them out
the window, and you have lost 20 bucks.  

 

Then they=ll have the phone they use with the
family, normal communication that may or may not be in their name, but nobody
involved in this business is going to call this phone.  The only phone calls you get on the dirty
phone are related to this.  Like I said,
that=s a dime a dozen.

 

A lot of
times they=re also aware of Title III
investigations with the Federal Government; we do wiretap investigations.  They know that we do Title III
investigations, so they change their phone numbers continuously.  19.99, you can buy a phone, and it can be
gone the next [da]y.  They roll them over
and over and over.  When they do that,
they accumulate phones.  

 

It=s not uncommon for us to run search
warrants and find drawers full of cell phones. 
That=s phones that basically have run
their course, and they dispose of them. 
They call them burners, is what they=re called.  They=ll use their burner until they get
done using their burner.  Or somebody
goes to jail that=s one of their associates, that
phone is in the trash, that phone=s out.  They=ll just keep rotating the phones
over and over.

 








Gosser also found Alarge amounts of
trash in the backseat, fast food wrappers, things like that from going through
drive-thrus.@  He
explained at trial that people transporting large quantities of drugs do not
want to leave their car, so they go to fast-food places.  Davis pointed out to the jury that vehicles
carrying large quantities of drugs have Aindicators inside
the vehicle of long travel; [the people transporting the drugs are] basically
living out of a car@ because they are responsible for getting
the drugs safely from Point A to Point B.

Gosser also noticed that the car=s air fresheners
were fresh, and he explained to the jury that it is common practice to use air
fresheners to mask the scent of narcotics when hauling large amounts.  Davis similarly testified that multiple air
fresheners would be used to mask the odors in vehicles transporting large
quantities of drugs.

A search of the trunk yielded just under four kilograms
of cocaine hidden under the lining of the trunk.  The drugs consisted of five separate bundles,
three wrapped in duct tape and two wrapped in electrical tape.  Gosser testified that it was Aeight and a half
pounds of quality cocaine that is not for personal use of anybody in the car. .
. . It=s packaged and
concealed inside of a vehicle that=s consistent with
the distribution of narcotics.@  Davis testified that the cocaine would be
worth about $400,000 to end users.  He
also testified that having multiple people in the vehicle, known in the drug
trade as Arolling@ or Arunning cat,@ is a way of
protecting the drugs during transport and also at the location of the
sale.  Finally, when questioned,








In your training, in your years of
experience, Jeff, is it conceivable, based on what you know, that there could
be three people who are close to each other, who know each other well, running
this amount of dope from a hub city or source city to a destination city and
somebody not be in on it?

 

Davis answered, ANo.@

 

Nobody=s fingerprints
were on the cocaine.  No weapons or other
drugs, including marijuana, were found. 
After Gosser found the cocaine, he arrested all three men.  He explained to the jury why he arrested all
three men:

[I]t=s the total amount of everything
that I saw out there all on the side of the road:  The travel plans, the marijuana‑type
issue with the cigars, the air fresheners, the trash, the eight cell
phones.  The origin of Houston,
destination of Oklahoma City; the travel plans of flying there but, you know,
15‑, 18‑hour trip back with a large amount of cocaine that costs a
large amount of money, you would have to have a vested interest to be in that
vehicle.

 

He based his conclusions on experience and training.

In his two points, Appellant contends that there is no
evidence or insufficient evidence that he possessed the drugs; specifically, he
argues that there is no evidence or insufficient evidence that he knew the
cocaine was in the trunk of the car. 
After this court issued its original opinion, the Texas Court of Criminal
Appeals held Athat there is no meaningful distinction
between a Clewis factual‑sufficiency standard and a Jackson v.
Virginia legal‑sufficiency standard@ and that

the Jackson v. Virginia standard
is the only standard that a reviewing court should apply in determining whether
the evidence is sufficient to support each element of a criminal offense that
the State is required to prove beyond a reasonable doubt.  All other cases to the contrary, including Clewis,
are overruled.[3]








Accordingly, we apply the same standard of review to
both of Appellant's sufficiency complaints. 
In reviewing the sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.[4]  This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.[5]


As the Texas Court of Criminal Appeals has held,

To prove unlawful possession of a controlled substance, the State must
prove that: (1) the accused exercised control, management, or care over the
substance; and (2) the accused knew the matter possessed was contraband.  Whether this evidence is direct or
circumstantial, Ait must establish, to the requisite level
of confidence, that the accused=s connection with
the drug was more than just fortuitous. This is the whole of the so‑called
>affirmative links= rule.@[6]








Given the men=s close relationship, the presence of the Ablunt@ materials, the
odor of marijuana, the presence of the cocaine in the vehicle in which they
traveled, the large amount of the cocaine, Appellant=s extreme
nervousness at the stop, the presence of the many cell phones, fresh air
fresheners, and fast-food trash, and the purported reason for all three men
being in the car, and applying the appropriate standard of review, we hold that
the evidence is sufficient to support Appellant=s conviction.  We overrule Appellant=s two points.

Having overruled both of Appellant=s points, we
affirm the trial court=s judgment.

 

 

LEE ANN
DAUPHINOT

JUSTICE

 

PANEL:  DAUPHINOT, WALKER, and
MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  October 28, 2010











[1]See Tex. R. App. P. 47.4.





[2]See Tex. R. App. P. 50.





[3]Brooks v. State, No. PD-0210-09, 2010 WL 3894613,
at *14 (Tex. Crim. App. Oct. 6, 2010). 





[4]Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct.
2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim.
App. 2007).





[5]Jackson, 443 U.S. at 319, 99 S. Ct. at
2789; Clayton, 235 S.W.3d at 778.





[6]Poindexter v. State, 153 S.W.3d 402, 405B06 (Tex. Crim. App. 2005)
(citations omitted).