# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00232-CR
## NO. 03-10-00233-CR

**Randal David Pepper, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NOS. D-1-DC-09-203263 & D-1-DC-10-904001,
HONORABLE FRED A. MOORE, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury found Randal David Pepper guilty of possession of marijuana in an amount less than five pounds but more than four ounces and possession of cocaine in an amount less than two hundred grams but more than four grams. *See* Tex. Health & Safety Code Ann. §§ 481.121(d), .115 (West 2010). Pepper's indictment for possession of cocaine included an enhancement allegation, which the trial court found to be true. The trial court assessed Pepper's punishment at fifteen years' imprisonment for possession of cocaine, and two years' imprisonment for possession of marijuana, with the sentences to run concurrently. In a single issue on appeal, Pepper challenges the sufficiency of the evidence supporting the convictions. We affirm the judgments of conviction.

**BACKGROUND**

On June 10, 2009, several police detectives conducted surveillance on the apartment of Michael Schuchert, whom the Austin Police Department was investigating for drug activity.[1] The detectives saw a white male, whom they believed to be Schuchert, exit the apartment and drive away in Schuchert's Toyota Avalon. The officers followed the Avalon to Bastrop County, but ended their surveillance after the car turned onto a dirt road.

That same day, another police detective arrested Schuchert at a south Austin location carrying a quarter kilogram of cocaine. Shortly after Schuchert's arrest, the detectives who had originally followed the Avalon returned to Schuchert's apartment to secure it until a search warrant could be obtained. They observed a mailbox next to the apartment door with the names Heddin and Pepper written inside. While the detectives were waiting for the search warrant to arrive, the man they had followed earlier drove up in a Camaro. Detective Anthony Nelson, dressed in shorts and a t-shirt, approached the man and asked him if he lived in the apartment. The man replied, "Yeah, I live there. You know, I stay there sometimes with my roommate, Michael." When Nelson identified himself as a police officer awaiting a search warrant on the residence, the man, according to Nelson, "became obviously visibly nervous" and recanted his prior statement, saying, "I don't stay there. That's not my address." The man then identified himself as Randal Pepper. Nelson testified at trial that Pepper acted as if he was "trying to hide something."

When asked why his name was on the mailbox, Pepper replied that he had bought a motorcycle in his name for Schuchert. He did not respond to Nelson's question regarding whether

---

[1] The facts recited herein are taken from the testimony and exhibits admitted at trial.

he received mail at the address. The detectives also asked Pepper where the Avalon was and he answered, "I have no idea. I wasn't driving it. Maybe [Schuchert] took it." After learning that the detectives had followed him, Pepper admitted that he had been untruthful, but stated that he was "not talking about anybody else's business." Pepper also stated that he had property in the apartment, but that he could come back later to get it. The detectives then detained Pepper until the search warrant was executed.

After additional police detectives arrived with the search warrant, the detectives entered the apartment and found a small amount of marijuana on the coffee table near a paper bearing the name Randal Pepper. The detectives arrested Pepper for possession of marijuana. Subsequent to Pepper's arrest, the detectives searched Pepper's vehicle and found over $28,000 in a vacuum-sealed plastic bag. Pepper's wallet contained an additional $3,567 in cash and his pocket contained $1,000. No drugs were found in Pepper's vehicle or on his person.

In the apartment, police found a small amount of marijuana on the living-room coffee table along with a scale and rolling papers. They also found a scale in a kitchen drawer. From papers found in the two bedrooms, the detectives concluded that one bedroom belonged to Schuchert and the other to Pepper. In Pepper's bedroom, police seized a scale and a refund check made out to Pepper. In the closet of the same bedroom, police seized 17.58 grams of cocaine found in the pocket of a hanging shirt, 1.4 pounds of marijuana hidden inside a suitcase, and a portfolio folder found in a plastic shelving unit. The portfolio contained a number of documents in Pepper's name, including a social security card, a bank payment book, an appraisal for a property in Rosanky, Texas, a

certificate of ownership for an unincorporated business, several automobile certificates of title, a security agreement, and a power-of-attorney document.

Pepper was indicted for possession of marijuana in the amount of four ounces or more but less than five pounds and for possession of cocaine in an amount of four grams or more but less than two hundred grams with intent to deliver.

At trial, the State presented two recorded jail calls between Pepper and members of his family. During the first call, Pepper asked his father to retrieve his belongings from the apartment, instructing his father to take "everything in the guest bedroom and everything in that guest bedroom closet" including the bed, clothes, shoes, and suitcases. Pepper also asked him to retrieve his clothes from the communal washer and dryer and get his laptop computer, designer sunglasses, and body-building supplements from the common areas of the apartment. Pepper further requested that his father "look in that mailbox and make sure there ain't no mail in there with my name on it." The next day, in another recorded jail call, Pepper's father informed him that he only found a few of Pepper's things in the apartment. The two men concluded that the police must have seized the missing items. In discussing whether Pepper's father should try to retrieve the items from the police, the following conversation took place:

Pepper:     They want me to go try and claim that shit.

Father:     That's what I was thinking, you know, if I should call them or not or
            just let them keep it.

Pepper:     No, no, no, no, let them have that shit.

. . . .

4

Father:      Yeah, so, I was also thinking, probably don't want to call and ask them for that stuff, that'd be like saying you lived there.

Pepper:      Admitting, yeah, admitting fault. That's stupid.

The court charged the jury on the offenses alleged in the indictments as well as the lesser-included offense of possession of cocaine, absent an intent to deliver. The jury found Pepper guilty of possession of marijuana and the lesser-included offense of possession of cocaine. The trial court imposed a fifteen-year sentence for possession of cocaine and a two-year sentence for possession of marijuana, with the sentences to run concurrently. Pepper now appeals.

## STANDARD OF REVIEW

When an appellant challenges the sufficiency of the evidence supporting his conviction, we examine all the evidence adduced at trial in the light most favorable to the verdict and ask whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

## DISCUSSION

In a single issue on appeal, Pepper challenges the sufficiency of his convictions for possession of marijuana and cocaine based on his contention that insufficient links existed to demonstrate his possession of the drugs. To prove possession, the State must establish that the defendant: (1) exercised care, control, and management over the controlled substance and (2) knew that he was in possession of the substance. *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *Martin v. State*, 753 S.W.2d 384, 386 (Tex. Crim. App. 1988). Where, as here,

5

the accused is not in exclusive possession of the place where the substance is found, his control over and knowledge of the contraband cannot be established unless there are additional independent facts and circumstances that link him to the contraband. *See id.* at 406; *Martin*, 753 S.W.2d at 387.

There are several factors by which a defendant may, under the unique circumstances of each case, be sufficiently linked to the contraband, including: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the contraband; (4) whether the defendant was under the influence of contraband when arrested; (5) whether the defendant possessed other contraband narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *See Figueroa v. State*, 250 S.W.3d 490, 500 (Tex. App.—Austin 2008, pet. ref'd); *see also Williams v. State*, No. 03-09-00169-CR, 2010 Tex. App. LEXIS 7472, at *13-15 (Tex. App.—Austin Sept. 10, 2010, pet. ref'd) (mem. op., not designated for publication) (applying *Figueroa* links to analyze sufficiency of convictions for possession of marijuana and cocaine). It is not the number of links that is dispositive, but rather the logical force of all the evidence, direct and circumstantial. *Figueroa*, 250 S.W.3d at 501. The force of the links need not be such as to exclude every other alternative hypothesis except the defendant's guilt. *Id.*

6

The State established several links between Pepper and the cocaine and marijuana found in the guest-bedroom closet. The first link, whether the defendant was present at the scene, was established by the detectives' testimony that they observed Pepper exit the apartment the morning of June 10 and return to the apartment later that day while the detectives were awaiting the search warrant. Evidence regarding whether contraband was in plain view, the second link, shows that a small portion of marijuana and several scales, which, as one detective testified, are commonly used in drug trafficking, were found in plain view. Proving the sixth link, incriminating statements upon arrest, Nelson testified that when first approached, Pepper admitted to staying at the apartment with his roommate, Michael, but that Pepper repudiated this statement upon learning that Nelson was a police officer. Nelson further testified that Pepper was acting as if he was trying to hide something. Pepper also provided an inadequate explanation as to why his name was on the mailbox, and lied to police detectives regarding the whereabouts of Schuchert's car. The tenth link, whether other contraband or drug paraphernalia were present, was demonstrated by testimony that the State seized marijuana, rolling papers, and two scales from the common areas of the apartment as well as the cocaine, marijuana, and scale found in Pepper's bedroom.

The State established that the defendant owned or had the right to possess the place where the drugs were found, the eleventh link, in several different ways. First, it provided evidence that Pepper's name was on the mailbox. Next, it produced evidence of several papers bearing Pepper's name seized from the apartment, including a portfolio found in the same closet as the drugs and containing many important documents, such as Pepper's social security card, car titles, a security agreement, a power-of-attorney document, and a property appraisal. Detective Nelson testified that

7

the bedroom in which the cocaine and marijuana were found contained several other documents, including a refund check, bearing Pepper's name. Nelson further testified that he did not collect every document he saw connecting Pepper to the apartment, explaining, "It was obvious to me that as I went through the room and I started picking up papers that said Randal Pepper, Randal Pepper, Randal Pepper, I didn't feel it necessary to pack everything this man owned and put it in a U-haul and seize it." Finally, Pepper's right to possess the contents of the apartment's guest bedroom and its closet was established by the jail calls between Pepper and his father, in which Pepper requested that his father retrieve "everything in the guest bedroom and everything in that guest bedroom closet" as well as other specified items in the common areas. Pepper further requested that his father pick up any mail that may have been delivered to him at the address. After Pepper concluded that the police had seized his belongings, the two men agreed that Pepper's father should not attempt to reclaim the items from the police because it would be like "admitting fault" and "saying [he] lived there."

The State proved that the defendant was found with a large amount of cash, the thirteenth link, as detectives found over $28,000 in cash in a bag in Pepper's car, as well as over $3,000 in Pepper's wallet and $1,000 in his pocket. Detective Jason Bryant testified that the money found in Pepper's car was wrapped in vacuum-sealed plastic, a practice commonly used in the narcotics trade. Finally, the fourteenth link, whether the conduct of the defendant indicated a consciousness of guilt, was established by Pepper's false statements to detectives upon finding them at the apartment, and his statements admitting ownership of the guest-bedroom closet's contents during the jail calls.

Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient to support Pepper's convictions for possession of marijuana and cocaine. Given the logical force of the evidence supporting the links between Pepper and the illegal drugs, the jury was rationally justified in finding guilt beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 899; *Figueroa*, 250 S.W.3d at 500-01. Pepper's sole issue is overruled.

## CONCLUSION

Because we conclude that the evidence is sufficient to support Pepper's convictions, we affirm the judgments of conviction.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed: May 27, 2011

Do Not Publish

9