TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00232-CR

NO. 03-10-00233-CR






Randal David Pepper, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT

NOS. D-1-DC-09-203263 & D-1-DC-10-904001, 

HONORABLE FRED A. MOORE, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N

 A jury found Randal David Pepper guilty of possession of marijuana in an amount
less than five pounds but more than four ounces and possession of cocaine in an amount less than
two hundred grams but more than four grams. See Tex. Health & Safety Code Ann. §§ 481.121(d),
.115 (West 2010). Pepper's indictment for possession of cocaine included an enhancement
allegation, which the trial court found to be true. The trial court assessed Pepper's punishment at
fifteen years' imprisonment for possession of cocaine, and two years' imprisonment for possession
of marijuana, with the sentences to run concurrently. In a single issue on appeal, Pepper challenges
the sufficiency of the evidence supporting the convictions. We affirm the judgments of conviction.




BACKGROUND

 On June 10, 2009, several police detectives conducted surveillance on the apartment
of Michael Schuchert, whom the Austin Police Department was investigating for drug activity. (1) The
detectives saw a white male, whom they believed to be Schuchert, exit the apartment and drive away
in Schuchert's Toyota Avalon. The officers followed the Avalon to Bastrop County, but ended their
surveillance after the car turned onto a dirt road.

 That same day, another police detective arrested Schuchert at a south Austin location
carrying a quarter kilogram of cocaine. Shortly after Schuchert's arrest, the detectives who had
originally followed the Avalon returned to Schuchert's apartment to secure it until a search warrant
could be obtained. They observed a mailbox next to the apartment door with the names Heddin and
Pepper written inside. While the detectives were waiting for the search warrant to arrive, the man
they had followed earlier drove up in a Camaro. Detective Anthony Nelson, dressed in shorts and
a t-shirt, approached the man and asked him if he lived in the apartment. The man replied, "Yeah,
I live there. You know, I stay there sometimes with my roommate, Michael." When Nelson
identified himself as a police officer awaiting a search warrant on the residence, the man, according
to Nelson, "became obviously visibly nervous" and recanted his prior statement, saying, "I don't stay
there. That's not my address." The man then identified himself as Randal Pepper. Nelson testified
at trial that Pepper acted as if he was "trying to hide something." 

 When asked why his name was on the mailbox, Pepper replied that he had bought a
motorcycle in his name for Schuchert. He did not respond to Nelson's question regarding whether
he received mail at the address. The detectives also asked Pepper where the Avalon was and he
answered, "I have no idea. I wasn't driving it. Maybe [Schuchert] took it." After learning that the
detectives had followed him, Pepper admitted that he had been untruthful, but stated that he was "not
talking about anybody else's business." Pepper also stated that he had property in the apartment, but
that he could come back later to get it. The detectives then detained Pepper until the search warrant
was executed. 

 After additional police detectives arrived with the search warrant, the detectives
entered the apartment and found a small amount of marijuana on the coffee table near a paper
bearing the name Randal Pepper. The detectives arrested Pepper for possession of marijuana. 
Subsequent to Pepper's arrest, the detectives searched Pepper's vehicle and found over $28,000 in
a vacuum-sealed plastic bag. Pepper's wallet contained an additional $3,567 in cash and his pocket
contained $1,000. No drugs were found in Pepper's vehicle or on his person.

 In the apartment, police found a small amount of marijuana on the living-room coffee
table along with a scale and rolling papers. They also found a scale in a kitchen drawer. From
papers found in the two bedrooms, the detectives concluded that one bedroom belonged to Schuchert
and the other to Pepper. In Pepper's bedroom, police seized a scale and a refund check made out to
Pepper. In the closet of the same bedroom, police seized 17.58 grams of cocaine found in the pocket
of a hanging shirt, 1.4 pounds of marijuana hidden inside a suitcase, and a portfolio folder found in
a plastic shelving unit. The portfolio contained a number of documents in Pepper's name, including
a social security card, a bank payment book, an appraisal for a property in Rosanky, Texas, a
certificate of ownership for an unincorporated business, several automobile certificates of title, a
security agreement, and a power-of-attorney document.

 Pepper was indicted for possession of marijuana in the amount of four ounces or more
but less than five pounds and for possession of cocaine in an amount of four grams or more but less
than two hundred grams with intent to deliver. 

 At trial, the State presented two recorded jail calls between Pepper and members of
his family. During the first call, Pepper asked his father to retrieve his belongings from the
apartment, instructing his father to take "everything in the guest bedroom and everything in that
guest bedroom closet" including the bed, clothes, shoes, and suitcases. Pepper also asked him to
retrieve his clothes from the communal washer and dryer and get his laptop computer, designer
sunglasses, and body-building supplements from the common areas of the apartment. Pepper further
requested that his father "look in that mailbox and make sure there ain't no mail in there with my
name on it." The next day, in another recorded jail call, Pepper's father informed him that he only
found a few of Pepper's things in the apartment. The two men concluded that the police must have
seized the missing items. In discussing whether Pepper's father should try to retrieve the items from
the police, the following conversation took place:


 Pepper: They want me to go try and claim that shit.

 

 Father: That's what I was thinking, you know, if I should call them or not or
just let them keep it.

 

 Pepper: No, no, no, no, let them have that shit.

 

 . . . .

 

 Father: Yeah, so, I was also thinking, probably don't want to call and ask
them for that stuff, that'd be like saying you lived there.

 

 Pepper: Admitting, yeah, admitting fault. That's stupid.


 The court charged the jury on the offenses alleged in the indictments as well as the
lesser-included offense of possession of cocaine, absent an intent to deliver. The jury found Pepper
guilty of possession of marijuana and the lesser-included offense of possession of cocaine. The trial
court imposed a fifteen-year sentence for possession of cocaine and a two-year sentence for
possession of marijuana, with the sentences to run concurrently. Pepper now appeals.


STANDARD OF REVIEW

 When an appellant challenges the sufficiency of the evidence supporting his
conviction, we examine all the evidence adduced at trial in the light most favorable to the verdict and
ask whether the jury was rationally justified in finding guilt beyond a reasonable doubt. Brooks v.
State, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).


DISCUSSION

 In a single issue on appeal, Pepper challenges the sufficiency of his convictions for
possession of marijuana and cocaine based on his contention that insufficient links existed to
demonstrate his possession of the drugs. To prove possession, the State must establish that the
defendant: (1) exercised care, control, and management over the controlled substance and (2) knew
that he was in possession of the substance. See Poindexter v. State, 153 S.W.3d 402, 405 (Tex.
Crim. App. 2005); Martin v. State, 753 S.W.2d 384, 386 (Tex. Crim. App. 1988). Where, as here,
the accused is not in exclusive possession of the place where the substance is found, his control over
and knowledge of the contraband cannot be established unless there are additional independent facts
and circumstances that link him to the contraband. See id. at 406; Martin, 753 S.W.2d at 387.

 There are several factors by which a defendant may, under the unique circumstances
of each case, be sufficiently linked to the contraband, including: (1) the defendant's presence when
a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity
to and the accessibility of the contraband; (4) whether the defendant was under the influence of
contraband when arrested; (5) whether the defendant possessed other contraband narcotics when
arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the
defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was
an odor of contraband; (10) whether other contraband or drug paraphernalia were present;
(11) whether the defendant owned or had the right to possess the place where the drugs were found;
(12) whether the place where the drugs were found was enclosed; (13) whether the defendant was
found with a large amount of cash; and (14) whether the conduct of the defendant indicated a
consciousness of guilt. See Figueroa v. State, 250 S.W.3d 490, 500 (Tex. App.--Austin 2008, pet.
ref'd); see also Williams v. State, No. 03-09-00169-CR, 2010 Tex. App. LEXIS 7472, at *13-15
(Tex. App.--Austin Sept. 10, 2010, pet. ref'd) (mem. op., not designated for publication) (applying
Figueroa links to analyze sufficiency of convictions for possession of marijuana and cocaine). It is
not the number of links that is dispositive, but rather the logical force of all the evidence, direct and
circumstantial. Figueroa, 250 S.W.3d at 501. The force of the links need not be such as to exclude
every other alternative hypothesis except the defendant's guilt. Id.

 The State established several links between Pepper and the cocaine and marijuana
found in the guest-bedroom closet. The first link, whether the defendant was present at the scene,
was established by the detectives' testimony that they observed Pepper exit the apartment the
morning of June 10 and return to the apartment later that day while the detectives were awaiting the
search warrant. Evidence regarding whether contraband was in plain view, the second link, shows
that a small portion of marijuana and several scales, which, as one detective testified, are commonly
used in drug trafficking, were found in plain view. Proving the sixth link, incriminating statements
upon arrest, Nelson testified that when first approached, Pepper admitted to staying at the apartment
with his roommate, Michael, but that Pepper repudiated this statement upon learning that Nelson was
a police officer. Nelson further testified that Pepper was acting as if he was trying to hide something. 
Pepper also provided an inadequate explanation as to why his name was on the mailbox, and lied to
police detectives regarding the whereabouts of Schuchert's car. The tenth link, whether other
contraband or drug paraphernalia were present, was demonstrated by testimony that the State seized
marijuana, rolling papers, and two scales from the common areas of the apartment as well as the
cocaine, marijuana, and scale found in Pepper's bedroom.

 The State established that the defendant owned or had the right to possess the place
where the drugs were found, the eleventh link, in several different ways. First, it provided evidence
that Pepper's name was on the mailbox. Next, it produced evidence of several papers bearing
Pepper's name seized from the apartment, including a portfolio found in the same closet as the drugs
and containing many important documents, such as Pepper's social security card, car titles, a security
agreement, a power-of-attorney document, and a property appraisal. Detective Nelson testified that
the bedroom in which the cocaine and marijuana were found contained several other documents,
including a refund check, bearing Pepper's name. Nelson further testified that he did not collect
every document he saw connecting Pepper to the apartment, explaining, "It was obvious to me that
as I went through the room and I started picking up papers that said Randal Pepper, Randal Pepper,
Randal Pepper, I didn't feel it necessary to pack everything this man owned and put it in a U-haul
and seize it." Finally, Pepper's right to possess the contents of the apartment's guest bedroom and
its closet was established by the jail calls between Pepper and his father, in which Pepper requested
that his father retrieve "everything in the guest bedroom and everything in that guest bedroom closet"
as well as other specified items in the common areas. Pepper further requested that his father pick
up any mail that may have been delivered to him at the address. After Pepper concluded that the
police had seized his belongings, the two men agreed that Pepper's father should not
attempt to reclaim the items from the police because it would be like "admitting fault" and "saying
[he] lived there."

 The State proved that the defendant was found with a large amount of cash, the
thirteenth link, as detectives found over $28,000 in cash in a bag in Pepper's car, as well as over
$3,000 in Pepper's wallet and $1,000 in his pocket. Detective Jason Bryant testified that the money
found in Pepper's car was wrapped in vacuum-sealed plastic, a practice commonly used in the
narcotics trade. Finally, the fourteenth link, whether the conduct of the defendant indicated a
consciousness of guilt, was established by Pepper's false statements to detectives upon finding them
at the apartment, and his statements admitting ownership of the guest-bedroom closet's contents
during the jail calls.

 Viewing the evidence in the light most favorable to the verdict, we conclude that the
evidence is sufficient to support Pepper's convictions for possession of marijuana and cocaine. 
Given the logical force of the evidence supporting the links between Pepper and the illegal drugs,
the jury was rationally justified in finding guilt beyond a reasonable doubt. See Brooks, 323 S.W.3d
at 899; Figueroa, 250 S.W.3d at 500-01. Pepper's sole issue is overruled.


CONCLUSION

 Because we conclude that the evidence is sufficient to support Pepper's convictions,
we affirm the judgments of conviction.



 ___________________________________________

 Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed: May 27, 2011

Do Not Publish
1. The facts recited herein are taken from the testimony and exhibits admitted at trial.