

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00175-CR

Matthew Ryan **CAMPBELL**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2010CR5045
Honorable Philip A. Kazen, Jr., Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  May 15, 2013

AFFIRMED

Matthew Ryan Campbell appeals from his convictions for the offenses of assault family violence (second offense) and violation of a protective order.  We affirm the judgment of the trial court.

### BACKGROUND

Campbell was indicted for the offenses of aggravated assault causing serious bodily injury (Count I), felony assault against a family member (second offense) (Count II), and violation of a protective order (Count III).  Campbell pled not guilty and proceeded to a jury

trial.   At trial, the complainant, Michelle Corpe, who was 24 years old at the time of trial, testified that she and Campbell began dating when she was 15 or 16 years old; she moved in with Campbell at the age of 16 or 17.   Michelle stated that she and Campbell had a tumultuous relationship, often breaking up and getting back together.   The couple had a child together in May 2006.  In July 2009, Michelle obtained a protective order against Campbell for committing family violence against her.   The order did not prohibit Campbell from visiting with his son.   State's Exhibit Number 1, a copy of the July 14, 2009 protective order, was admitted into evidence.

Michelle further testified that on January 14, 2010, she went to Campbell's apartment to pick up their three-year-old son.   Campbell told Michelle that the child was napping and needed to be dressed and to wait inside the apartment.   When she came in, Campbell shut the door behind her and asked Michelle if they could go to dinner as a family.   Michelle declined and Campbell became upset.   Campbell hit Michelle in the back of her head with his hand, and continued to hit her in the head, face, and neck with his hands.   Campbell also punched her in the stomach.   Michelle used her hands to protect her face.   Michelle was almost able to leave with her child, but Campbell pulled them back inside the apartment and broke Michelle's cell phone when she tried to call for help.   Campbell complained that Michelle's injuries were causing blood to get on the carpet and he told Michelle to shower because she was "a mess."   Eventually, Campbell allowed Michelle and her son to leave after she promised him that they would return to his apartment after gathering clothes from her home.   Michelle drove to a nearby friend's home and called the police.   Michelle testified that the assault lasted a couple of hours, during which time she blacked out twice.

San Antonio Police Department Officer Edward Rodriguez testified that he responded to an assault call on January 14, 2010.  He met Michelle at a gas station, and she told him she had

been punched in the face numerous times by her ex-boyfriend. Rodriguez observed minor swelling and redness on the left side of Michelle's face. He also saw that her hands were lightly bruised. Rodriguez testified that her injuries were consistent with being struck in the face with a hand, and with blocking blows to the face with her hands. Rodriguez transported Michelle to a police substation so that her injuries could be photographed. She was then taken to police headquarters to give a statement.

Michelle further testified that after giving her statement, she went home and fell asleep. The next thing she remembered was being in the hospital. She stated that when her family was unable to wake her the next morning, her uncle drove her to the hospital where a CAT scan was performed and x-rays were taken of her brain, hip, and neck. She was then transported by ambulance to Wilford Hall Hospital. According to Michelle, she was taken to Wilford Hall because she had a brain hemorrhage that could not be treated at Santa Rosa Hospital. She was admitted to the hospital where she remained for a couple of days. While there, she was given morphine and pain medication, and placed in a neck brace, which she continued to wear for a couple of months. Soon after leaving the hospital, Michelle suffered from migraine headaches, and followed up with her general practitioner, Dr. Nora Valdez. Michelle was also treated by a therapist for post-traumatic stress disorder (PTSD), memory loss, and anxiety.

Dr. Valdez testified that she began seeing Michelle in 2003. Michelle visited Dr. Valdez on January 19, 2010 complaining of leg pain relating to the assault. Michelle also complained of neck pain, back pain, attention deficit disorder and PTSD, all of which Dr. Valdez related to a head contusion. Dr. Valdez referred Michelle to physical therapy and to a neurologist, Dr. Peter Tarbox.

Dr. Tarbox testified that he first saw Michelle on March 16, 2010. Dr. Tarbox reviewed Michelle's hospital records, which were also admitted into evidence. The CT scan taken at Santa

Rosa showed a small region of petechial hemorrhage and a rupture of the very small capillaries of the frontal lobe area. He described the injury as a "bruising type." The records from Wilford Hall showed bruising and soft tissue injuries to the scalp, but the CT scan did not show an intracranial bleed. Michelle was discharged in stable condition with a "clear C spine." Dr. Tarbox stated that he treated Michelle for post-concussion syndrome, with damage to the frontal lobe. Dr. Tarbox had Michelle undergo an EEG test, which showed that she suffered from a generalized seizure disorder. He stated that her injuries were consistent with having been assaulted. On cross-examination, Dr. Tarbox conceded that he was unaware that Michelle was in a car accident prior to January 2010 and that she had complained of headaches, neck pain, and back pain before January 2010.

The defense called two witnesses. Veronica Romo, a GPS electronic monitoring house arrest officer, testified that sometime in 2011, Michelle asked to have the charges against Campbell dropped. Romo also admitted that such a request does not mean that the assaultive offense did not occur. Michael Fortney, a private investigator, testified that he interviewed Michelle on January 9, 2012 and that she told him she suffered from six injured neck vertebrae and a shattered hip, thus indicating that her account of her injuries to Fortney was inconsistent with her trial testimony and the medical records.

The jury found Campbell not guilty of count I (aggravated assault with a deadly weapon causing serious bodily injury to a family member) and guilty of count II (felony assault against a family member, second offense) and count III (violation of a protective order). Campbell timely appealed.

### DISCUSSION

On appeal, Campbell complains that the evidence was legally insufficient to support his convictions based on the State's failure to connect any injuries Michelle is alleged to have

sustained to Campbell. When the sufficiency of the evidence is challenged, we review "all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010). We defer to the jury's credibility and weight determinations, and after giving such deference, "will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element." *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009).

Campbell asserts that the evidence was insufficient "to support the conviction of family violence assault and as such the evidence was insufficient to support that he violated the protective [order] in committing an assault against the complainant." Essentially, he argues that because the jury acquitted him of the offense of aggravated assault causing serious bodily injury, the evidence was also insufficient to support his convictions for counts II and III. We disagree.

A person commits the offense of assault if he intentionally, knowingly, or recklessly causes bodily injury to another. *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (West 2011). Although usually a Class A misdemeanor, the offense is elevated to a third-degree felony if it is committed against a person whose relationship with the defendant is described in sections 71.0021(b) (dating), 71.003 (family), or 71.005 (household) of the Texas Family Code and the defendant has been previously convicted of an assault involving family violence. *Id.* § 22.01(b)(2)(A) (West 2011); *see* TEX. FAM. CODE ANN. § 71.0021(b) (West Supp. 2012); *Id.* §§ 71.003, 71.005 (West 2008).

Considering the elements of the offense and viewing the evidence in the light most favorable to the verdict, we hold there was sufficient evidence to support the jury's finding that Campbell committed the offense of felony assault against a family member. *See Poindexter*, 153

S.W.3d at 405 (citing *Jackson*, 443 U.S. at 318–19); *Geesa v. State*, 820 S.W.2d 154, 159 (Tex. Crim. App. 1991). The testimony and medical records provided evidence of each element of the offense. Michelle presented uncontroverted testimony that it was Campbell, her on-again, off-again boyfriend and father of her son, who struck her numerous times and that she suffered injuries as a result. Officer Rodriguez testified that he observed bruises and swelling on Michelle immediately after the assault. Photographs depicting her injuries were also admitted for the jury to view. Drs. Valdez and Tarbox testified that they treated Michelle for medical issues related to the assault and that they each reviewed hospital records showing that she was treated for injuries the day after the assault. Further, a copy of the judgment reflecting Campbell's prior conviction for the offense of assault bodily injury to a family member in cause number 912197 on March 6, 2007 was admitted as State's Exhibit Number 28. Although the defense attempted to discredit Michelle and the seriousness of her injuries, it was within the jury's province to resolve conflicts in the evidence and assess the witness's credibility. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991) (holding jury resolves conflicts in evidence). Viewing the evidence in the light most favorable to the verdict, the jury could have found beyond a reasonable doubt that Campbell and Michelle were dating, that Campbell intentionally, knowingly, or recklessly struck Michelle with his hand and caused her bodily injury, and that he was previously convicted of assault against a family member. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2). Therefore, deferring to the jury's credibility determination and conflict resolution, we hold the evidence is sufficient to support Campbell's conviction for assault against a family member.

We similarly conclude that the evidence is sufficient to support Campbell's conviction for violation of a protective order. Campbell does not dispute that an agreed protective order was entered in July 2009. Campbell further acknowledges that his challenge to the violation of

the protective order is "a bit more problematic," but nonetheless reasons that "if one believes [Michelle] was being less than truthful as to the events of that night and her subsequent alleged injuries, then it is very likely that there was no harmful contact between the Appellant and [Michelle] on January 14, 2010." As we have already stated, the jury was free to reconcile the conflicts in the evidence and could have found the essential elements of the offense of felony assault against a family member beyond a reasonable doubt. Because the evidence was sufficient to support Campbell's conviction for felony assault against a family member, we likewise hold the evidence is sufficient to support his conviction for violation of a protective order. *See* TEX. PENAL CODE ANN. § 25.07(a)(1) (West Supp. 2012) (a person against whom a protective order is in place commits the offense of violating a protective order if he knowingly or intentionally commits an act of family violence). Accordingly, we overrule Campbell's sole issue on appeal.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court.

Rebeca C. Martinez, Justice

Do not publish