

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00065-CR

Kendrick **RANDLE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 2, Guadalupe County, Texas
Trial Court No. CCL-13-0703
Honorable Brenda Chapman, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
    Marialyn Barnard, Justice
    Rebeca C. Martinez, Justice

Delivered and Filed:  April 8, 2015

AFFIRMED

Kendrick Randle appeals his conviction for the misdemeanor offense of marijuana possession. In one issue on appeal, he argues the evidence was legally insufficient to establish he possessed the marijuana because the only link between him and the marijuana was that it was found under his seat in the rear of a vehicle driven by another. We affirm.

**STANDARD OF REVIEW**

In a federal due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). The court of criminal appeals has explained that this standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence." *Adames*, 353 S.W.3d at 860. Therefore, on appellate review, we determine whether based on "cumulative force of all the evidence" the necessary inferences made by the trier of fact are reasonable. *Id.* We conduct this constitutional review by measuring the evidentiary sufficiency with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.*

To prove unlawful possession of a controlled substance, the State has the burden of showing that the accused exercised control, management, or care over the substance, and the accused knew the substance possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Because "an accused must not only have exercised actual care, control, or custody of the substance, but must also have been conscious of his connection with it and have known what it was, evidence which affirmatively links him to it suffices for proof that he possessed it knowingly." *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). "The 'affirmative links rule' is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Poindexter*, 153 S.W.3d at 406. Thus, when "the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the

contraband." *Id.* (citation omitted). Mere presence of the accused at the location where the drugs are found is insufficient, by itself, to establish actual care, custody, or control of drugs. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). Presence or proximity, however, when combined with other evidence, may be sufficient. *Id.* And, it is not the number of links that is dispositive, but rather the logical force of all of the evidence, both direct and circumstantial. *Id.*

Texas courts have recognized a non-exclusive list of possible "affirmative links" as sufficient, either singly or in combination, to establish possession of contraband:

(1) the defendant's presence when a search is conducted;
(2) whether the contraband was in plain view;
(3) the defendant's proximity to and the accessibility of the narcotic;
(4) whether the defendant was under the influence of narcotics when arrested;
(5) whether the defendant possessed other contraband or narcotics when arrested;
(6) whether the defendant made incriminating statements when arrested;
(7) whether the defendant attempted to flee;
(8) whether the defendant made furtive gestures;
(9) whether there was an odor of contraband;
(10) whether other contraband or drug paraphernalia were present;
(11) whether the defendant owned or had the right to possess the place where the drugs were found;
(12) whether the place where the drugs were found was enclosed;
(13) whether the defendant was found with a large amount of cash; and
(14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id.* at 162 n.12.

It is well-established that the absence of certain links do not weigh against those that are present. *Ferguson v. State*, 313 S.W.3d 419, 426 (Tex. App.—Houston [1st Dist.] 2009, no pet.). And, the law does not require the State to prove sole, exclusive possession of the illegal drug. *Id.* Possession need not be exclusive, and evidence that shows the accused jointly possessed the contraband with another is sufficient. *Martin v. State*, 753 S.W.2d 384, 386 (Tex. Crim. App. 1988). It is the State's burden to show that "there are affirmative links between the defendant and the drugs such that he, too, knew of the drugs and constructively possessed them." *Ferguson*, 313 S.W.3d at 423 (quoting *Poindexter*, 153 S.W.3d at 412).

**THE EVIDENCE**

At the trial on the merits, the State presented the testimony of Detective Jaime Diaz, a City of Seguin police officer. On the occasion in question, Detective Diaz was conducting surveillance in an unmarked vehicle on a house because authorities had received information that methamphetamines were being sold there. While he was watching the house, several cars arrived, but no one exited any of the vehicles. He then saw a van pull up and a white male exit the vehicle. The man walked into the house, returned to the vehicle after a few seconds, and then got back in the vehicle and left. As the van passed him, Detective Diaz saw that the driver and front passenger were not wearing seatbelts. He followed the vehicle and called for backup for two reasons. First, he was not in a marked police vehicle. Second, he was in a dark area that was known for having a lot of gang members and members of the Mexican Mafia. However, instead of waiting for backup, he decided to initiate his lights. The vehicle slowed down, but continued traveling and ended up turning into a mobile home park. Detective Diaz testified that in his experience, when drivers do not pull over right away, they are either trying to conceal something or the people in the car are trying to talk to one another to get their stories straight. According to Detective Diaz, he thought that might be a possibility in this case.

After the vehicle stopped, Detective Diaz talked to the driver and identified him as Thomas Florio. Detective Diaz testified that he knew Florio was a mechanic at Leo's Mechanic Shop, a parolee from another state, and an Aryan Brotherhood gang member. Detective Diaz asked Florio for his driver's license, but Florio did not have one. Detective Diaz then asked Florio where he was going and to identify the people inside the vehicle. According to Detective Diaz, Florio said that he did not know their names, but that they were friends of his girlfriend's son. Florio was going to drop them off somewhere in the area. Detective Diaz then made contact with the three

passengers. Although the front seat passenger identified himself as Robert Perez, Detective Diaz later found out his name was Michael Perez. At that point, the backup, Officer Gonzales, arrived.

Detective Diaz testified that when he made contact with Perez, he smelled an odor of fresh marijuana coming from inside the vehicle. According to Detective Diaz, because of the smell, he had probable cause to search the vehicle for marijuana. The third person removed from the van was a backseat passenger who identified himself as Angel Gonzales. His true name, however, was Juan Angel Martinez. Detective Diaz later discovered that two of the passengers gave fake names because they had outstanding warrants. The last person to exit the van was Randle, who was removed by Officer Gonzales. Detective Diaz then conducted a search of the vehicle. He started the search on the driver's side in the middle row of seats where Randle had been sitting. The seats in that row were bucket seats. He observed a large plastic bag with a green substance inside of it. As soon as he put his head down and tilted it, he could see the marijuana there. He did not have to get down on his hands and knees in order to look under Randle's seat. After he found the marijuana, he detained the driver of the vehicle and Randle. Detective Diaz testified that he detained the driver due to his history and for safety reasons. He detained Randle because of the location of the marijuana. Detective Diaz then asked if anybody would tell him whom the marijuana belonged to, but nobody responded. He continued searching the vehicle and then located a small amount of marijuana on the roadway outside the front passenger door and on the window. According to Detective Diaz, he believed the front passenger had attempted to get rid of the marijuana by throwing it out when the officers were not looking. Detective Diaz testified that he did not charge anyone in connection with the marijuana found outside the car. He did, however, arrest Randle for possession of the marijuana found under his seat because he believed Randle had care, custody, and control of the marijuana found under his seat. Of the four people in the vehicle, Perez and Martinez were arrested because of outstanding warrants, and Randle was arrested for possession

of marijuana. Detective Diaz testified that Florio, the driver, was not arrested because "[t]here was nothing to arrest him on." Detective Diaz testified that he did not try to obtain fingerprints off of the plastic bag of marijuana.

Detective Diaz testified that Randle was angry and upset that he was being arrested for marijuana possession. According to Detective Diaz, Randle said that if he went to jail, he was "going to whoop somebody's ass." Detective Diaz testified that in his experience, he has seen people display certain emotions, such as anger, in order to convince him not to arrest them. And, he thought that might have been the case with Randle.

Detective Diaz arrested Randle because Randle had access to the marijuana and it was between his legs. Initially, Detective Diaz testified that he thought it was possible that Randle knew the bag of marijuana was under his seat. He based this opinion on the position of the bag and the positioning of Randle. Detective Diaz eventually concluded, however, that given the location of the marijuana and where Randle's feet were, "it almost seems impossible for him not to [have] know[n] that it was there." Detective Diaz testified that once he and Randle were in the booking area of the jail, Randle said the marijuana "belonged to the white boy [Florio]."

## DISCUSSION

On appeal, Randle argues that the State proved only "mere presence and proximity" to the marijuana and failed to prove any additional facts that would logically lead to a conclusion that he exercised care, custody, control, or management over the marijuana that was found under the seat he was occupying in the van. The State responds that the evidence was sufficient for the jury to rationally conclude that Randle either solely possessed the marijuana or jointly possessed it with the other occupants of the vehicle. We agree with the State.

In addition to the location of the marijuana under the seat Randle was occupying, the State identifies several other factors as affirmative links. First, Randle was present at the time of the

search, and because he was the last to exit the vehicle, no other passenger could have placed it under Randle's seat after he exited the vehicle. Second, the marijuana was under Randle's seat where he had the most accessibility of any of the other occupants of the vehicle. Third, the odor of fresh marijuana coming from the vehicle was the strongest from the rear of the vehicle where Randle was sitting. Fourth, the marijuana under Randle's seat was in plain view, with the top portion of the bag sticking out from underneath the seat. Fifth, although initially denying knowledge of the marijuana and acting upset and angry, Randle eventually told Detective Diaz the marijuana belonged to Florio. Thus, argues the State, Randle conceded knowledge of the marijuana because he could only have known it belonged to Florio if he knew the marijuana was there in the first place. And, according to the State, at the very least the evidence supports a finding of Randle jointly possessing the marijuana with other occupants of the vehicle. *See Martin v. State*, 753 S.W.2d 384, 386 (Tex. Crim. App. 1988) (stating possession of contraband need not be exclusive and evidence showing defendant jointly possessed with another is sufficient). We agree with the State that these other factors constitute affirmative links sufficient for the jury to rationally conclude Randle possessed the marijuana.

We note that Randle takes issue with some of the affirmative links factors upon which the State relies. First, he contends that in looking to whether the marijuana was in plain view, we should consider whether it was in plain view of the officers who searched the vehicle, not himself. Randle cites no authority for this argument, and we disagree that whether the marijuana was in plain view of the officer is determinative. In fact, it only seems logical that we should look to whether the marijuana was in plain view of Randle, not the officers, since the affirmative links factors are considered for the purpose of determining whether Randle knew he was in possession of contraband. *See In re K.T.*, 107 S.W.3d 65, 69 (Tex. App.—San Antonio 2003, no pet.) (noting in a case involving a juvenile accused of delinquent conduct that marijuana found inside a cup

holder was in plain view *of the defendant*); *see also Wiersing v. State*, 571 S.W.2d 188, 190 (Tex. Crim. App. 1978) (explaining that marijuana was not in plain view *of appellant*).

Randle also points to Detective Diaz's conflicting testimony. At first, Detective Diaz testified it was "possible" Randle knew the baggie of marijuana was under his seat. Detective Diaz eventually testified that "it almost seems impossible for [Randle] not to [have] know[n] that it was there." To the extent these are conflicting statements, we must assume the jury resolved the conflict in favor of finding it was impossible for Randle not to have known the marijuana was there. *See Lopez v. State*, 267 S.W.3d 85, 96 (Tex. App.—Corpus Christi 2008, no pet.).

Finally, Randle analogizes this case to *Wiersing v. State*, 571 S.W.2d 188 (Tex. Crim. App. 1978). In *Wiersing*, the court of criminal appeals held the State failed to prove facts affirmatively linking the defendant, who was a passenger in a car in which marijuana was found, to the marijuana found under the seat in which he was sitting. *Id.* In that case, however, the passenger sitting next to the defendant testified that it was her marijuana, that she had placed it under the seat where the defendant was sitting, and that the defendant had no knowledge of it. *Id.*; *see also Lucas v. State*, No. 06-09-00177-CR, 2010 WL 1931751, at *4 (Tex. App.—Texarkana 2010, no pet.) (distinguishing *Wiersing* where one of the other occupants of the vehicle claimed ownership of the drugs and testified defendant did not know the drugs were present). In this case, none of the other occupants of the vehicle in which he was riding claimed ownership of the drugs or testified that Randle did not know the drugs were present. Thus, *Wiersing* is distinguishable from the facts presented here.

We therefore conclude the evidence was legally sufficient to support Randle's conviction for possession of marijuana and affirm the judgment of the trial court.

Karen Angelini, Justice

Do not publish