Robert POINDEXTER, Appellant,

v.

The STATE of Texas.

No. PD–1816–03.

Court of Criminal Appeals of Texas.

Jan. 12, 2005.

Joel Douglas Tinker, Corpus Christi, for appellant.

Douglas K. Norman, Assist. DA, Corpus Christi, Matthew Paul, State's Attorney, Austin, for state.

## *OPINION*

COCHRAN, J., delivered the opinion of the unanimous Court.

After a bench trial, appellant was convicted of the felony offense of possession of a controlled substance with intent to deliver. The Corpus Christi Court of Appeals held that the evidence was legally insufficient, reversed the conviction, and ordered an acquittal.[1] We granted the State's Petition for Discretionary Review to determine whether the court of appeals erred in finding that appellant was not affirmative-

---

1. *Poindexter v. State,* 115 S.W.3d 295, 300 (Tex.App.-Corpus Christi 2003).

ly linked to the cocaine found in various locations in his home.[2] Assessing all the evidence—including the unobjected-to hearsay—in the light most favorable to the verdict, we find that the evidence links appellant to the contraband and is sufficient to support his conviction. We reverse the court of appeals' judgment of acquittal and remand for consideration of appellant's remaining claims.

## I.

We quote the court of appeals' summary of the evidence:

> On January 18, 2001, members of the Tri–County Narcotics Task Force serving Aransas, Nueces, and San Patricio Counties (the "narcotics officers") secured a search warrant for 1307 Van Loan, located in Corpus Christi. The warrant identified "a black male subject known only as Poindexter, aged approximately mid 60's" and authorized his arrest along with the "other occupants of the suspected place whose names and physical descriptions are unknown." The search warrant was issued expressly on the basis of an affidavit executed by narcotics officer Russell Kirk. That affidavit accused Poindexter of illegal drug possession based only on the following statements regarding a confidential informant ("CI"): "CI informed me that CI was inside Suspected Place within the past 24 hours and that CI personally observed the Suspected Party in

> possession of a quantity of cocaine, therein."

> The affidavit referred to a drug buy that occurred on January 17, 2001. On that day, Officer Kirk drove his CI to 1307 Van Loan, where the CI got out of the car and went into the house. Officer Kirk stayed in his car, which he parked down the street. Before the CI emerged from the house, a gray dually pickup truck arrived and parked in the driveway. Officer Kirk could not see or identify its driver. He did not record its license plate number. Subsequently, the CI emerged from the house and met up with Officer Kirk. The CI had successfully purchased $100 worth of crack cocaine, which Officer Kirk testified the CI did not have before entering the house at 1307 Van Loan.

> On January 19, 2001, the narcotics officers executed a warrant on the location. No one was home. The narcotics officers gained access to the home by beating down the front door with a battering ram. The officers conducted a systematic search of the house, which uncovered narcotics and paraphernalia. The contraband was found in two locations: a bedroom towards the front of the house (the "front bedroom") and the master bedroom.

> In the front bedroom, the officers found crack residue caked in several vials sitting on a plate found either inside or on top of a dresser. In the master bedroom, the officers discovered

---

**2.** We granted review on the State's two issues:

 1 Whether the defendant's non-exclusive possession of a house, together with evidence showing that the entire house was set up for the production, packaging, and sale of crack cocaine, affirmatively links him to cocaine found throughout the house, though not in every room?

2 Whether un-objected to hearsay testimony has probative value in a bench trial, to the same extent as in a jury trial?

We agree with appellant that the court of appeals' opinion did not suggest "that a different rule of evidence applies to hearsay offered in bench trials—as opposed to hearsay offered in jury trials." *Id.* at 11. We therefore dismiss the State's second issue as improvidently granted.

cocaine, crack cocaine, razor blades, several small plastic bags, and a scale with cocaine residue on it. These items were discovered in two different closets. The crack cocaine was found in a small tin box of breath mints hidden in the ceiling of the master bedroom's linen closet.[3] Some cocaine was also found stuffed in the same spot. Additionally, the officers discovered a few small plastic bags hidden inside a brown paper bag on the top shelf of the linen closet. Finally, they found a scale and razor blades inside a different closet located in the master bedroom. No fingerprints or photographs were taken, but the evidence was collected and sent to the lab for testing. The contraband was confirmed to be cocaine and crack cocaine.[4]

The court of appeals declined to consider the probative value of the C.I.'s unobjected-to out-of-court statements that appellant possessed cocaine, sold cocaine, and hid the cocaine in an open hall closet.[5] It also concluded that, because there was some evidence indicating that another person was present in the house at the time the C.I. bought crack cocaine, the State failed to prove that appellant had exclusive possession of the house.[6] Finally, it stated that there were insufficient affirmative links between appellant and the drugs and drug distribution materials found in the house, and therefore no rational trier of fact could find that the evidence was legally sufficient to support his conviction.[7]

## II.

When deciding whether evidence is sufficient to support a conviction, a reviewing court must assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.[8] To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband.[9] Whether this evidence

---

**3.** Testimony put this open linen closet both inside and just outside the master bedroom. At oral argument defense counsel clarified that the open linen closet was actually in the hall, close to the master bedroom.

**4.** *Poindexter*, 115 S.W.3d at 297.

**5.** 115 S.W.3d at 301–02.

**6.** *Id.* at 299–300.

**7.** *Id.* at 303. The Court of Appeals set out seventeen possible factors that may be considered when determining whether the evidence is sufficient to affirmatively link the accused to contraband. It concluded that the State's evidence touched on four-the first ("the contraband was in plain view or recovered from an enclosed place"), second ("the accused was the owner of the premises or the place where the contraband was found"), fourth ("the contraband was conveniently accessible to the accused"), and sixteenth ("the quantity of the contraband"). The court then dis-

cussed those factors to explain why it found the evidence insufficient. The court concluded:

> the light most favorable to conviction illuminates the following facts. Poindexter resided in a house in which drugs were discovered. He had access to them by virtue of his access to the house. And finally, the quantity of drugs and contraband discovered was sufficient to be easily identified as such.
>
> None of these factors affirmatively links Poindexter to the drugs. They simply reaffirm his connection to the house.

*Id.* at 301–02.

**8.** *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991).

**9.** *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim.App.1995); *Martin v. State*, 753 S.W.2d 384, 387 (Tex.Crim.App.1988).

is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. This is the whole of the so-called 'affirmative links' rule." [10]

The "affirmative links rule" is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs.[11] This rule simply restates the common-sense notion that a person—such as a father, son, spouse, roommate, or friend—may jointly possess property like a house but not necessarily jointly possess the contraband found in that house.[12] Thus, we have formulated the rule that "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances

which affirmatively link the accused to the contraband." [13]

In deciding whether the evidence is sufficient to link the defendant to contraband, the trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony.[14] Under Texas Rule of Evidence 802, he is entitled to give probative value to "inadmissible hearsay admitted without objection." [15] Thus, once the trier of fact has weighed the probative value of unobjected-to hearsay evidence in its fact-finding process, an appellate court cannot deny that evidence probative value or ignore it in its review of the sufficiency of the evidence.[16] An appellate court may determine only if any rational trier of fact could have—based on all of the evidence admitted at trial (including any unobjected-to hearsay)—found the essential elements of the offense beyond a reasonable

10. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim.App.1995).

11. *See United States v. Phillips*, 496 F.2d 1395, 1397 (5th Cir.1974) (stating that "[p]roof of mere proximity to contraband is not sufficient to establish actual constructive possession or the element of knowledge"; distinguishing the "non-explaining possessor" from the "incredible non-possessor" and concluding that evidence was sufficient because "[t]here are no facts in this case tending to establish exclusive possession and knowledge by [co-defendant]").

12. *United States v. Smith*, 930 F.2d 1081, 1086–87 (5th Cir.1991).

13. *Deshong v. State*, 625 S.W.2d 327, 329 (Tex.Crim.App.1981).

14. *Mattias v. State*, 731 S.W.2d 936, 940 (Tex. Crim.App.1987).

15. *Chambers v. State*, 711 S.W.2d 240, 245–47 (Tex.Crim.App.1986). In their treatise, STEVEN GOODE, GUY WELLBORN, AND MICHAEL

SHARLOT, TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL (1988), the authors explained the rule: "Rule 802 does not accord probative value to hearsay evidence. It merely ensures that if hearsay is admitted by waiver, it will be treated like any other evidence admitted by waiver. That is, whatever rational probative value it may have will not be denied artificially as under prior law." *Id.* § 802.1, at 571–572. *See Forrest v. State*, 805 S.W.2d 462, 463–64 (Tex.Crim.App.1991) (under *Chambers*, witness's hearsay testimony had probative value and supported conviction even though it was contradicted by in-court testimony); *Fernandez v. State*, 805 S.W.2d 451, 453–56 (Tex.Crim.App.1991) (under *Chambers*, unobjected-to hearsay testimony had probative value and could be basis for sustaining conviction); *Villalon v. State*, 791 S.W.2d 130, 135–37 (Tex.Crim.App.1990) (under *Chambers*, victim's hearsay statement to nurse was statutorily admissible, and, even though "contradicted" by witness at trial, was probative evidence of defendant's guilt).

16. *Fernandez*, 805 S.W.2d at 453–56; *Chambers*, 711 S.W.2d at 245–47.

doubt.[17]

## III.

The court of appeals held, and the parties agree, that appellant was linked to the Van Loan house where the contraband was found, but that he did not have exclusive possession of it.[18] This conclusion was based upon evidence that: 1) both bedrooms in appellant's house appeared to be used; 2) a second person, possibly a woman, opened the door for the C.I. during the January 17th drug buy; and 3) because Officer Kirk was too far away, he was unable himself to positively identify appellant as the driver of the gray dually truck that arrived during the January 17th drug buy. This is a very slender evidentiary reed to support a factual conclusion that someone else lived with appellant or had joint control over the house. Nonetheless, because the State did not contest this conclusion, we will not infer appellant's knowledge of and control over the contraband solely from his possession of the house where drugs were found. Thus, we look *for additional facts and circumstances* which affirmatively link appellant to the drugs.[19]

**A. Officer Kirk's testimony that the CI told him that appellant was selling narcotics out of his residence at 1307 Van Loan was probative evidence of appellant's guilt of possession of crack cocaine.**

■■ At trial Officer Kirk testified on direct examination, with no objection or request for a limiting instruction,[20] as follows:

Q Now, back on January 17th of last year, did you have an occasion to investigate an individual that you knew at that time as Poindexter, a 60–year–old black male, six foot four, 190 pounds, that lived at 1307 Van Loan Avenue?

A Yes, ma'am.

Q And do you recall how that particular address and individual came to your attention?

A Through the use of an informant. He gave me some information about that residence, the subject in that residence, Poindexter, *being in possession of and selling narcotics.*

The CI's statements also came into evidence through the affidavit and search warrant for 1307 Van Loan, admitted as State's Exhibit Number 3, after the defense stated it had "[n]o objections." The affidavit states, in part: "Within 24 hours of the date of this affidavit, I received information from a confidential informant (hereinafter referred to as "CI").... CI informed me that CI was inside the suspected place within the past 24 hours and that CI personally observed the Suspected Party in possession of a quantity of cocaine, therein."

■■ The court of appeals held that the CI's statements were not objectionable hearsay statements, but rather out-of-

**17.** *Id.*

**18.** *Poindexter,* 115 S.W.3d at 300. The State did not argue that this was an "exclusive possession" case and in fact conceded it was not at oral argument.

**19.** *Deshong,* 625 S.W.2d at 329.

**20.** *See* Tex.R. Evid. 105(a). Under that rule, if the opposing party requests a limiting instruc-

tion for evidence which is admissible for one purpose, such as to prove probable cause, but not for another, such as guilt, the court must restrict the evidence to its proper scope, "but, in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal." *Id.*

court statements explaining how the defendant became the focus of a police investigation. The court stated: "Poindexter had no basis on which to object to Officer Kirk's testimony because it was not offered as hearsay.... The trial court properly allowed Officer Kirk's testimony into the record for the purpose of demonstrating what the CI said, but those statements could not be used to prove the truth of the matter asserted: that Poindexter was in possession of drugs."[21]

■■■■ We disagree. While appellant could have objected to these out-of-court statements as hearsay, he did not. While appellant could have requested the trial court to limit his consideration of these statements to show how or why the officers' attention focused upon appellant, he did not. In fact, appellant did not contest the propriety of the initial investigation, the sufficiency of the warrant, the existence of probable cause, or any other preliminary legal question. He simply contested the ultimate fact that he knowingly possessed the cocaine. Thus, all of the State's evidence was offered to prove appellant's guilt, not to explain how appellant became the focus of a police investigation. As this Court noted in *Marin v. State*:

---

21. 115 S.W.3d at 302–03. It is true that testimony by an officer that he went to a certain place or performed a certain act in response to generalized "information received" is normally not considered hearsay because the witness should be allowed to give some explanation of his behavior. But details of the information received are considered hearsay and are inadmissible—unless the officer's conduct has been challenged, for instance, as lacking probable cause. As we stated in *Schaffer v. State:*

> Frequently, testimony will have an impermissible hearsay aspect along with a permissible nonhearsay aspect. Almost always it will be relevant for a testifying officer to relate how she happened upon the scene of a crime or accident; thus, it is permissible for her to testify that she was acting in response to "information received." "An arresting officer should not be put in the false position of seeming just to have happened upon the scene, he should be allowed some explanation of his presence and conduct." McCormick [on Evidence (Cleary rev. ed. 1984)] Section 249, p. 734. n3. The police officer, however, should not be permitted to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports on grounds that she was entitled to tell the jury the information upon which she acted.

*Schaffer v. State*, 777 S.W.2d 111, 114–115 (Tex.Crim.App.1989).

In *Head v. State*, 4 S.W.3d 258, 261 (Tex.Crim.App.1999), we explained that whether testimony constitutes impermissible hearsay "turns on how strongly the content of the out-of-court statement can be inferred from the context." *Id.* The appropriate inquiry focuses on whether the "information received" testimony is a general description of possible criminality or a specific description of the defendant's purported involvement or link to that activity. For example, "I received information of possible drugs being sold at 5th and Main" is, under *Head*, an admissible general description of why an officer investigated the situation. More specific statements, pointing to the defendant, such as "I received information that drugs were being sold from the defendant's house," clearly convey the content of the out-of-court statement and are inadmissible indirect hearsay under *Head*. Of course, if the material issue is whether an officer had probable cause to arrest or search a person, the reasonableness of the officer's conduct is called into question, and the hearsay details of information that he received are admissible. This was acknowledged in *Schaffer*, where we stated in a footnote that "[a]n officer's actions may be made an issue before the jury ... and thus it may be necessary for the officer to testify not only how he happened upon the scene, but also the specific information received so that the jury may resolve any issues regarding an officer's actions." 777 S.W.2d at 115 n. 4; *see, e.g., Benford v. State*, 895 S.W.2d 716, 718 (Tex. App.-Houston [14th Dist.] 1994, no pet.) (officer could testify that third party told him defendant "was the guy with the rocks" because statement was necessary to determine whether probable cause existed to detain and search defendant).

evidence of a certain kind, such as hearsay, might be excluded upon the request of a party to the lawsuit. The trial judge has no duty to exclude it on his own, and would probably fall into error if he did. Once admitted without objection, such evidence enjoys a status equal to that of all other admissible evidence. In particular it has probative value and will support a judgment in favor of the party offering it.[22]

The out-of-court statements of the C.I. have sufficient probative value, in and of themselves, to establish an affirmative link between appellant and the crack cocaine found in his home.[23] But, even putting aside this testimony, the State established other sufficient affirmative links between appellant and the drugs.

**B. The First Factor: The contraband was both in plain view and recovered from a hidden location accessible only to one who exercised control over the house.[24]**

 The court of appeals reasoned:

Regarding the first factor, no State witness testified that the narcotics and contraband were found in plain sight. Each discovery was made inside a bedroom, not in any of the common areas of the house, and they were made only after methodical searching. The State offered no testimony regarding how many bedrooms the house had or whether the doors to those bedrooms were found closed, locked, or ajar. The light most favorable to conviction leads us to conclude that the plate found in the front bedroom was most likely visible, even though the State's witnesses gave conflicting testimony as to whether it was found on top of or inside the dresser. But even so, that was only crack residue, not the lion's share of narcotics that was recovered from the hidden stash in the closet ceiling. Since the bulk of the illegal cache of drugs was out of sight, the evidence regarding the first factor weighs against an affirmative link.[25]

We agree with the court of appeals that the evidence shows that the only cocaine found in plain view was the residue found

---

**22.** *Marin v. State,* 851 S.W.2d 275, 278 (Tex. Crim.App.1993) (citing *Chambers v. State,* 711 S.W.2d 240, 245–247 (Tex.Crim.App.1986)).

**23.** *See Rodriguez v. State,* 819 S.W.2d 871, 873 (Tex.Crim.App.1991) (stating that "[t]he relative probative value of this hearsay evidence was assessed by the trier of fact in reaching its verdict. When the jury convicted appellant, it expressed its view that the outcry testimony was probative. Once the trier of fact has done so, an appellate court may not reevaluate the probity of this individual item of evidence"); *Fernandez,* 805 S.W.2d at 456 (when assessing the sufficiency of evidence when unobjected-to hearsay was admitted, "the appellate court has only the discretion to determine if any rational trier of fact could have, based on the evidence admitted at trial, found the essential elements of the offense beyond a reasonable doubt"); *see generally,* Black, *Hearsay Admitted Without Objection— A Defense of Its Probative Value,* 17 S.Tex.L.J.

69, 71–72 (1975) (noting that "[n]o one has ever suggested lack of probative value as a hearsay danger. ¶ Perhaps the best argument .in favor of the probative value of hearsay lies in the many exceptions to its exclusion. If hearsay were nonprobative there would not be so many courts and lawyers and commentators seeking excuses to admit it").

**24.** An "affirmative link" can be established when the contraband is in plain view, *Hughes v. State,* 612 S.W.2d 581, 582 (Tex.Crim.App. 1981), or when the contraband is hidden in a place tied to the accused. *Mendoza v. State,* 583 S.W.2d 396, 397 (Tex.Crim.App.1979) (defendant linked to heroin found hidden in closet in part by admission that other items found in closet—a coat, $1800 cash, and can of lactose (which can be used to cut heroin)— were his).

**25.** *Poindexter,* 115 S.W.3d at 301.

on a plate in the front bedroom. However, appellant was linked "to the lion's share of narcotics that was recovered from the hidden stash in the closet ceiling." Besides the unobjected-to testimony related above, Officer Kirk testified:

Q Had you received information during the course of your investigation of where the narcotics would be located inside this residence?

A Yes, ma'am, I did.

Q Based on this information, did that lead you to the open linen closet in the master bedroom?

A Yes, ma'am, it did.

Q And what was the first item that you found in this shelving in the master bedroom?

A Well, the first item, like I said, was a brown bag, brown paper sack. It contained smaller plastic bags inside of it commonly used to package narcotics.

Q And what was the next thing you found in that shelving?

A That item was located on the top shelf. Above that there was a hole, a small hole in the ceiling. I checked that hole in the ceiling, and that's when I pulled out an Altoids box and checked the inside of it. It contained crack cocaine.

Q Okay. And then were there any other items found inside that hole while you were present?

A Yes, ma'am. More cocaine.

On cross-examination, Officer Kirk testified as follows:

Q Is this what you found, something like this, up in the attic?

A Something like that.

Q Not in the attic but in the hole up in the closet.

A Yes, sir. By the shelf.

* * *

Q Now, according to what you testified, your CI had told you where you could find the drugs, right?

A Yes, sir.

Q I mean, you went directly to the closet?

A Not directly yeah. I knew—*he told me where Mr. Poindexter kept his narcotics.*

The court of appeals apparently considered this latter testimony for its truth, but found it "vague and imprecise":

The only testimony regarding Poindexter's knowledge of the secret place in which those narcotics were found came from Officer Kirk. Kirk testified that he knew where Poindexter kept his drugs based on the information given to him by his CI. Although that is some evidence on the issue of knowledge, it is too vague and imprecise for a rational finder of fact to conclude that Poindexter knew drugs were hidden in the ceiling. Thus, the State's evidence links Poindexter to the house but does not establish that he knew of the secret stash of drugs hidden in the ceiling.[26]

This testimony is neither vague nor imprecise—it informed the trial judge that appellant knew where the contraband was hidden—an essential component of the culpable act of "possession."[27] It defies logic

26. *Id.* at 301–302.

27. *Humason v. State,* 728 S.W.2d 363, 368 (Tex.Crim.App.1987) (Clinton, J., concurring) ("myriad possession cases allude to the quite distinct requirement that the actor 'know of the whereabouts of the contraband.'... [A]n awareness of the whereabouts of the contraband is an essential ingredient of the culpable act of 'possession;' that is, the state of having 'care,' 'control,' 'management' or 'custody' under our law").

to think that the C.I. told Officer Kirk that appellant kept his crack cocaine hidden in the ceiling (exactly where it was found), and yet appellant did not know of that secret stash.

## C. The Second Factor: The Accused Was the Owner of the Premises or the Place Where the Contraband Was Found.[28]

We agree with the appeals' court that there was evidence that appellant resided at 1307 Van Loan during the time in question. The trial court took judicial notice of the fact that appellant listed 1307 Van Loan as his address on the bail bond he secured after being charged in this case. The State also offered a utility bill addressed to appellant at 1307 Van Loan, and a photograph of him, both recovered during their search of the house. Any rational factfinder could conclude that appellant lived at this house.

## D. The Fourth Factor: The contraband was conveniently accessible to the accused.[29]

Regarding this factor, the appeals court held "The fourth factor favors the State. Because Poindexter apparently lived at 1307 Van Loan, the contraband was certainly more accessible to him than to someone who did not live at the 1307 Van Loan address. We know this because the State's witnesses consistently testified that the house was locked and not open to the

public."[30] Officer Kirk's testimony implied that, during the controlled buy, appellant drove up in a gray dually pickup truck, got out, went inside, and sold the drugs to the informant:

Q Now, you did the purchase of the narcotics on the 17th. Was there an attempt to execute the warrant on the 18th of January?

A Yes, ma'am, there was.

Q And what occurred at that time?

A Actually, nothing occurred.... We did a drive by this residence and noticed that the gray dually was not home, or wasn't at the residence. So based on the information that I obtained during the investigation during the original purchase, the probable cause buy, when the dually is not there, Mr. Poindexter is not there. So we declined to execute the warrant that day on the 18th.[31]

There was also evidence that appellant hid the cocaine in a secret place—it was accessible to him as a resident but not to a casual visitor or one who did not know of the secret place.[32]

Finally, Officer Kirk testified on redirect examination that nothing linked any other person to the Van Loan house:

Q And did you find any other links to any other individuals other than the defendant, Robert Johnson Poindexter, and other letters, any other pic-

---

28. *Deshong v. State,* 625 S.W.2d at 329 (noting link if the accused was the owner of the place where the contraband was found).

29. *Id.* (noting link that "the narcotic was conveniently accessible to the accused").

30. *Id.* at 302.

31. The prosecutor argued the significance of this evidence to the trial court: "The agent testified that the buy did not occur, per the confidential informant, until the gray dually

arrived. And he had from his information that the defendant drove a gray dually."

32. *See, e.g., United States v. McGhee,* 882 F.2d 1095, 1099 (6th Cir.1989) (evidence sufficient to link defendant to secreted weapons because, while they "were hidden in such a way as to be inaccessible to a stranger or casual visitor, they would be readily accessible to anyone who knew their location").

tures, or anything else that would link them to that residence?

A No, ma'am.

Q During the course of your investigation, was there anyone else mentioned [in] reference [to] that residence other than Poindexter?

A No, ma'am.

This is crucial testimony, as it demonstrates that there was no affirmative evidence that any other person lived in the same house or exercised care, control, or custody over either the house or the drugs. The mysterious woman who opened the door to the C.I. was never seen again and never connected to the house or drugs in any other way. Nor is there any evidence that this mysterious woman, even if she exercised joint possession of the house, exercised exclusive possession over the drugs. The mere fact that a person other than the accused might have joint possession of the premises does not require the State to prove that the defendant had *sole* possession of the contraband, only that there are affirmative links between the defendant and the drugs such that he, too, knew of the drugs and constructively possessed them.[33] In sum, there is no evidence that would support a conclusion that appellant was an innocent bystander to someone else's drug operations within his home.

### E. The Sixteenth Factor: The quantity of the contraband.

Regarding the sixteenth factor, the appeals court held that the "quantity of con-

traband discovered, favors the State. The State's witness testified that the contraband was identifiable upon discovery. That is, the narcotics officers who pulled the cocaine and crack cocaine out of the ceiling were able to identify it as such on the spot."[34] We further note that manufacturing and packaging materials, including glass tubes or vials used to make powder cocaine into crack cocaine, razors, baggies, and a scale, were found during the search. This evidence suffices to prove that appellant not only possessed the crack cocaine found in the closet, but intended to distribute it, just as he had previously sold some to the C.I.

### IV.

The relative probative value of all of the above evidence, including the hearsay evidence, was assessed by the trial judge in reaching his verdict. When the trial judge found appellant guilty, he expressed his view that the evidence, including the hearsay evidence, was probative and sufficient to support his finding. We cannot reweigh or recharacterize that evidence.[35] We conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant exercised care, custody, control, and management over the contraband and that appellant knew the substance possessed was contraband. Therefore, we hold that the evidence was legally sufficient to support appellant's conviction. We reverse the judgment of acquittal entered by the court of appeals and remand

---

**33.** *See United States v. Richardson*, 208 F.3d 626, 632 (7th Cir.2000) (noting that "[c]onstructive possession [of drugs] may be sole or joint"; concluding that defendant's connection to the house where he resided or was the "caretaker" was sufficient to link him to the drugs found in plain view in that house because his clothes and several medicine bottles with his name on them were found in his

bedroom, he received mail at that address, and he was on the premises on the evening of the search).

**34.** *Poindexter,* 115 S.W.3d at 302.

**35.** *Fernandez,* 805 S.W.2d at 453–56; *Chambers,* 711 S.W.2d at 245–47.

the case to that court to consider appellant's remaining claims.[36]

---

**36.** *See id.* at 297 ("We reverse Poindexter's conviction based on insufficiency of the evidence and do not address his other issue on appeal as he is acquitted of the charge and cannot be re-tried").