Opinion issued March 15, 2018



In The

# Court of Appeals

For The

## First District of Texas

————————————

### NO. 01-17-00218-CR

————————————

**LISANDRO BELTRAN DE LA TORRE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

On Appeal from the 25th District Court
Colorado County, Texas
Trial Court Case No. CR-16-082

---

## O P I N I O N

A jury convicted Lisandro Beltran de la Torre of possession of a controlled substance, cocaine, in an amount of less than one gram. The trial court sentenced him to two years' confinement in the state jail, probated for three years. Beltran de la Torre appeals, contending that (1) the evidence is legally insufficient to prove that

he possessed the cocaine discovered in plain view on the center console of his car; (2) the trial court erred in refusing to instruct the jury that "mere presence" is insufficient to demonstrate possession; and (3) the trial court erred in instructing the jury that more than one person can be found to have possessed a controlled substance at the same time. We conclude that legally sufficient evidence supports the verdict, and the trial court did not err in instructing the jury. Accordingly, we affirm.

## BACKGROUND

One mid-morning in February 2016, Columbus Police Department Officer A. Axel was dispatched to the local office of the Texas Department of Public Safety parking lot in Columbus, Texas. He was there to investigate a report that people were drinking alcoholic beverages in the parking lot. Sergeant J. Lara also responded to the dispatch. Lara and Axel arrived about the same time. Lara identified a black BMW sedan as the subject of the report. Lara approached the sedan and spoke with its occupants.

Beltran de la Torre was sitting behind the wheel of the sedan. Two woman also sat in the sedan, one in the front passenger seat and another in the backseat behind her. Lara ran the license plate and determined that the car was registered to Beltran de la Torre. Looking inside the car, Lara noticed a small plastic bag on top of the car's center console. The bag contained a powdery substance that he believed was cocaine or methamphetamine.

2

Lara ordered Beltran de la Torre to exit the car, and then asked Axel to walk Beltran de la Torre to the rear of the car and detain him. Axel handcuffed Beltran de la Torre and returned to assist Lara. On his return, Axel also observed the bag on the console, as well as some beer cans in the back seat.

Beltran de la Torre smelled of alcohol. His eyes were "bloodshot red" with "extremely dilated" pupils. Based on his training and experience, Lara explained that jittery behavior, constant movement, talkativeness, red eyes, and dilated pupils can be signs of narcotics use. Lara concluded that Beltran de la Torre was under the influence of something, either narcotics, or alcohol, or both. Lara conceded that he is not certified as a drug recognition expert and that he could not say with certainty whether Beltran de la Torre had used a narcotic. Lara also agreed that Beltran de la Torre was calm, and red eyes alone do not indicate anything in particular. He testified, however, that dilated pupils are not an indication of alcohol intoxication.

Axel also testified that Beltran de la Torre's pupils were "severely dilated." Beltran de la Torre's eyes were glossy and he looked like he "hadn't slept in a long while, for at least a day or so." His eyes "were kind of sunk in, like, when a person hasn't been able to sleep." Axel testified that he had training and experience recognizing when people are under the influence of drugs or narcotics. He said that people under their influence exhibit a wide array of behaviors. They may be fidgety, or overly talkative, assertive, aggressive, or drowsy, depending on the substance.

3

With narcotics, Axel stated that a person's pupils may be enlarged and somewhat glossy. Axel opined that Beltran de la Torre's dilated pupils were an indication that he may have ingested cocaine, but enlarged pupils are not always due to cocaine use. He agreed that Beltran de la Torre was "laid back," "calm," and did not exhibit the fidgety, overly talkative, or aggressive behaviors that one would associate with a stimulant like cocaine. Axel conceded that he was not a drug recognition expert.

Lara and Axel's field-test of the powdery substance yielded a positive result for cocaine. The powder was later analyzed in a laboratory and found to contain less than a gram of cocaine.

Lara and Axel testified about an unidentified man in the vicinity of the sedan. The man denied being associated with Beltran de la Torre and the two women. Neither Lara nor Axel detained the man. Axel's body camera footage showed that Axel initially asked the man to sit down nearby, but the man subsequently left the scene.

Axel testified that the female passenger in the front seat also had dilated pupils and "puffy," "sunken in" eyes. The rear passenger likewise had dilated pupils and was "very fidgety."

Beltran de la Torre testified in his own defense. He denied that the bag of cocaine was his. He did not know that any cocaine was present in the car. He also denied drinking beer in the parking lot. He conceded that the car was registered in

4

his name, but he countered that there were four people in his car that day, including the man who had walked away.  But on the day he was arrested, Beltran de la Torre did not mention to Lara or Axel that the other man was one of the car's occupants.

## DISCUSSION

### I. Legal Sufficiency

Beltran de la Torre contends that the evidence is insufficient to find him guilty of possession of a controlled substance given that there were multiple occupants in the car. The cocaine was not found on his person, he argues, and thus the jury's finding is impermissibly speculative because the evidence fails to link him to the cocaine.

#### A. Standard of review and applicable law

In a review for legal sufficiency, we view all of the evidence in the light most favorable to the verdict and determine whether a rational factfinder could have found the essential elements of the crime beyond a reasonable doubt.  *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (relying on *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979)).  We must not re-evaluate the weight or credibility of the testimony; rather, we defer to the jury's resolution of conflicts in the evidence.  *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

To obtain a conviction for unlawful possession of cocaine, the State must prove beyond a reasonable doubt that the defendant (1) exercised actual care,

5

custody, control, or management over the cocaine, and (2) knew it was cocaine. TEX. HEALTH & SAFETY CODE §§ 481.102(3)(D), 481.115(a); *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *abrogated on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 n.32 (Tex. Crim. App. 2015). Possession of the drug need not be exclusive—evidence that shows the defendant jointly possessed the drug with another can suffice. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985); *Woodard v. State*, 355 S.W.3d 102, 110 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Whether direct or circumstantial, the evidence must establish that the defendant's connection with the drug was more than just fortuitous. *Poindexter*, 153 S.W.3d at 405–06; *Wiley v. State*, 388 S.W.3d 807, 813 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). This is the "affirmative links" rule. *Poindexter*, 153 S.W.3d at 406 (quoting *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)). This rule is designed to protect an innocent bystander from conviction based solely upon his mere presence in the vicinity of someone else's drugs. *Id.* It recognizes that a defendant who is not in exclusive possession of the place where the controlled substance was found may not have knowledge of and control over the drugs; in such cases, additional independent facts and circumstances beyond mere presence must link him to the drugs. *Tate v. State*, 500 S.W.3d 410, 413–14 (Tex. Crim. App. 2016)

(citing *Poindexter*, 153 S.W.3d at 406, and *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)).

The Texas Court of Criminal Appeals has instructed that evidence of one or more of following links may provide the logical force that demonstrates possession and not mere presence:

(1)  the defendant's presence when a search is conducted;

(2)  whether the drugs were in plain view;

(3)  the defendant's proximity to and the accessibility of the drugs;

(4)  whether the defendant was under the influence of drugs when arrested;

(5)  whether the defendant possessed other drugs or contraband when arrested;

(6)  whether the defendant made incriminating statements when arrested;

(7)  whether the defendant attempted to flee;

(8)  whether the defendant made furtive gestures;

(9)  whether there was an odor of drugs;

(10)  whether drug paraphernalia or other contraband were present;

(11)  whether the defendant owned or had the right to possess the place where the drugs were found;

(12)  whether the place where the drugs were found was enclosed;

(13)  whether the defendant was found with a large amount of cash; and

(14)  whether the defendant's conduct indicated a consciousness of guilt.

*Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006); *Burrell v. State*, 445 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).  The State need not prove all of these links.  *See James v. State*, 264 S.W.3d 215, 219 (Tex.

App.—Houston [1st Dist.] 2008, pet. ref'd). Further, the absence of some links is not evidence of innocence that weighs against those links that are present. *Id.* (citing *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976)). It is not the number of links that is dispositive, but the cumulative weight of the evidence. *Evans*, 202 S.W.3d at 162; *James*, 264 S.W.3d at 219. Though this framework guides an appellate court in analyzing the evidence, the dispositive inquiry remains the one set forth in *Jackson*—whether the combined and cumulative force of the evidence and any permissible inferences permit a jury to rationally find the defendant guilty of the offense beyond a reasonable doubt. *Tate*, 500 S.W.3d at 414.

### B. Analysis

Several circumstances link Beltran de la Torre to the cocaine. He was present when officers searched the car. The car was registered in his name. As its owner and driver, he exercised ultimate control over the car and its contents. *See Deshong*, 625 S.W.2d at 329 (defendant was driver and evidence strongly suggested defendant owned car); *Powell v. State*, 112 S.W.3d 642, 645–46 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (defendant was driver).

The cocaine sat in plain view in the enclosed space of the car on its center console. *See Deshong*, 625 S.W.2d at 328–29 (car was an enclosed space and marijuana was in plain view once officer opened car door); *Robinson v. State*, 174 S.W.3d 320, 327 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (truck was

8

enclosed space). The center console was conveniently accessible to Beltran de la Torre from his location in the driver's seat. *See Deshong*, 625 S.W.2d at 329 (marijuana found on driver's side floorboard conveniently accessible to driver); *Lair v. State*, 265 S.W.3d 580, 586 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (ecstasy/MDMA in center console was conveniently accessible to driver).

Both Sergeant Lara and Officer Axel testified that Beltran de la Torre exhibited signs of narcotic use, namely, dilated pupils. *See Edwards v. State*, 178 S.W.3d 139, 144 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (bloodshot eyes and slurred speech indicated intoxication, which was affirmative link to phencyclidine found in truck). Together, the combined and cumulative force of this evidence would allow rational jurors to conclude beyond a reasonable doubt that Beltran de la Torre intentionally and knowingly possessed the cocaine. *See Tate*, 500 S.W.3d at 416–18.

Beltran de la Torre argues that he was not driving under the influence of drugs and thus drug intoxication should not be credited as a link. He reasons that he exhibited no signs of drug ingestion other than dilated pupils and that dilated pupils alone are not enough. Signs of cocaine use, however, when combined with the presence of the drug in the car and Beltran de la Torre's proximity to it, can demonstrate sufficient logical force to allow a rational jury to find knowing

9

possession of the cocaine. *See Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011).

Beltran de la Torre contends that the presence of other passengers in the car vitiates the legal sufficiency of the evidence. Because the cocaine was within arm's reach of the other occupants, he argues, none of the affirmative links in this case suffice to show that the cocaine belonged to him or jointly belonged to him and one or more of the other occupants. The Court of Criminal Appeals has rejected Beltran de la Torre's position. In *Tate*, the Court upheld a driver's conviction for possession of methamphetamine, found in plain view in his car, despite the presence of two other occupants. 500 S.W.3d at 411–13. It was undisputed in that case that the drugs were within reach of the driver and the front-seat passenger, and there was conflicting testimony as to whether they were accessible to the passenger in the back seat. *Id.* at 412, 414. The court of appeals reversed the driver's conviction, holding that his proximity to the drugs alone was not sufficient evidence of possession, given the proximity of the other occupants. *Id.* at 414.

The Court of Criminal Appeals reversed, explaining that, in reviewing the evidence for legal sufficiency, "the logical force of all of the admitted evidence must be considered in the light most favorable to the conviction, meaning that all reasonable inferences from the evidence must be resolved in favor of the jury's guilty verdict." *Id.* at 417. The defendant owned and was driving the car in which the

10

drugs were found, the drugs and a syringe were in plain view, and they were conveniently accessible to the defendant. *Id.* The Court held that, considered together, the affirmative links and the logical inferences one could draw from them permitted the jury to find the defendant guilty of possession, notwithstanding the defendant's denial that the drugs were his. *Id.* at 417–18.

The evidence established a number of affirmative links to the cocaine, from which a rational jury could conclude that Beltran de la Torre knowingly possessed it. We therefore hold that legally sufficient evidence supported the jury's finding of knowing possession.

## II. Jury Charge Issues

Beltran de la Torre raises two challenges to the trial court's jury instructions. First, he contends that the trial court erred in refusing to instruct the jury that his "mere presence" at the scene was insufficient to find him guilty of knowing possession. Second, he contends that the trial court erred in instructing the jury about joint possession. The trial court instructed: "Two or more people can possess the same controlled substance at the same time." He argues that this reference to joint possession was an improper comment on the weight of the evidence.

### A. Standard of review and applicable law

A trial court must give the jury a written charge that sets forth the law applicable to the case. TEX. CODE CRIM. PROC. art. 36.14. The charge must include

11

statutory defenses, affirmative defenses, and justifications raised by the evidence. *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007). A trial court should not instruct the jury, however, on defensive theories that are not expressly included as statutory defenses in the Penal Code but instead negate an element of the offense. *Id.* at 209.

In reviewing jury-charge issues, our threshold inquiry is whether error exists. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

### B. Because it is not a statutory defense to possession, the trial court was not required to submit a "mere presence" instruction.

The trial court instructed the jury that, to find Beltran de la Torre guilty, it had to find beyond a reasonable doubt that he intentionally and knowingly possessed cocaine in an amount of less than a gram. His requested "mere presence" instruction is not a statutory defense included in the Penal Code. Rather, this defensive theory negated elements of the charged offense—intentional and knowing possession of the drugs. Because "mere presence" negates the element of control and is not expressly a statutory defense, we hold that the trial court did not err in refusing to give it. *See Walters,* 247 S.W.3d at 208–09; *Lara v. State*, 400 S.W.3d 199, 200 (Tex. App.—Beaumont 2013, no pet.).

## C. The trial court acted within its discretion in instructing the jury about joint possession.

The applicable statute defines "possession" as "actual care, custody, control, or management." TEX. HEALTH & SAFETY CODE § 481.002(38). Because the statute does not include language about joint possession, Beltran de la Torre contends that the trial court improperly commented on the weight of the evidence by adding that "[t]wo or more people can possess the same controlled substance at the same time."

Statutory definitions that affect the meaning of the elements of an offense are "law applicable to the case" and must be included in the charge. *Arteaga v. State*, 521 S.W.3d 329, 334 (Tex. Crim. App. 2017). But a trial court must also tailor a jury charge to the facts presented at trial. *Burnett v. State*, __ S.W.3d __, 2017 WL 4158919, at *5 (Tex. Crim. App. Sept. 20, 2017).

The statutory definition of "possession"—"actual care, custody, control, or management"—has particular legal significance. It is not an expression of ordinary speech. *See Christian v. State*, 686 S.W.2d 930, 932 (Tex. Crim. App. 1985) (stating that identical definition of "possession" in Penal Code is technical in meaning). The statutory definition does not address "joint possession." Both "possession" and "joint possession," however, have established legal meanings that differ from everyday usage; thus, jurors should not be left to their own devices to decide whether "possession" includes "joint possession" when the facts at trial raise the question. *See Celis v. State*, 416 S.W.3d 419, 433 (Tex. Crim. App. 2013) (trial courts may

13

define statutorily undefined words and phrases that have established legal definitions or that have acquired technical meanings that differ from their meanings in common parlance). Otherwise, jurors would be free to define "possession"—an essential element of the offense—in a manner that is inconsistent with its legal meaning. *See Medford v. State*, 13 S.W.3d 769, 771–72 (Tex. Crim. App. 2000) (proper to define "arrest" for jury despite lack of statutory definition because it has acquired technical meaning "and it would be inappropriate if jurors arbitrarily applied their personal definitions of arrest").

For this reason, the Committee on Texas Criminal Pattern Jury Charges recommends that when the evidence raises the possibility of joint possession, the definition of "possession" should be supplemented to include the instruction that the trial court included in this case. *See* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Criminal Pattern Jury Charges: Intoxication, Controlled Substances & Public Order Offenses* PJC 41.6 (2016). As support for the instruction, the Committee relies on *Brooks v. State*, 529 S.W.2d 535 (Tex. Crim. App. 1975). In *Brooks*, the Court of Criminal Appeals noted that the trial court instructed the jury on joint possession under facts similar to those present in this case, without disapproving of the instruction. Because the legal meaning of "possession" conforms to the instruction that the trial court gave the jury and addresses an issue raised by the evidence, the trial court's instruction was not an improper comment on

the weight of the evidence.  Accordingly, we hold that the trial court did not err in instructing the jury about joint possession.

## CONCLUSION

We affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Bland, Lloyd, and Caughey.

Publish.  TEX. R. APP. P. 47.2(b).