# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-17-00495-CR
_____

### DESNI DETROND WILLIAMS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 17-02-02374-CR**

### MEMORANDUM OPINION

A grand jury indicted Appellant Desni Detrond Williams (Appellant or Williams) for manufacture or possession of a controlled substance—namely cocaine—with intent to deliver in, on, or within 1000 feet of a school, with allegations of three prior convictions as enhancements. *See* Tex. Health & Safety Code Ann. § 481.112 (West 2017).[1] Williams pleaded "not guilty" to the offense

---

[1] We cite the current version of statutes as subsequent amendments do not affect our disposition.

charged and "not true" to all three enhancements. A jury found Williams guilty and found Williams committed the offense in, on, or within a drug-free zone. The trial court found the allegations in the enhancement paragraphs true and assessed punishment at forty-five years of confinement. On appeal, Williams challenges the sufficiency of the evidence to support the jury's verdict. We affirm the judgment of conviction as reformed.

Summary of Trial

Testimony of Sergeant Clyde Vogel

Sergeant Clyde Vogel testified that he is a patrol sergeant for the Conroe Police Department but that he had previously worked as a detective in narcotics. According to Vogel, one of the biggest problem areas in Conroe is the Dugan area, where crack cocaine is the predominant drug. Vogel testified that the community there is "tight knit" and suspicious of plain clothes officers, and that the police rely on confidential informants and controlled buys. Vogel explained that, during a controlled buy, the police "have the capability to watch in real time as the transaction takes place through [] surveillance equipment."

Sergeant Vogel testified that he had contact with a confidential informant (CI) to purchase drugs from Williams and that, based on previous dealings with the CI, Vogel regarded the CI as reliable. Vogel stated

2

> . . . [t]he informant came in, we talked to him, he was given money, a recording device, and actually a vehicle [] that we have. We followed him to the area of 615 Booker T. Washington, and . . . he made contact with the defendant.

Vogel testified that he gave the CI $40 to purchase the drugs. Looking at a map of the area, Vogel testified that the house at 615 Booker T. Washington is within 1000 feet of Booker T. Washington Junior High School.

Vogel agreed that he searched the CI prior to the controlled buy, that he had outfitted the CI with an audio-visual recording device, that the controlled buy was recorded, and that Vogel was able to watch the controlled buy occur in real time. Vogel agreed that State's Exhibit 3 was a video recording of the controlled buy, and the recording was published to the jury. Vogel agreed that, as to viewing the recording, the jury was in the same position that Vogel was. Vogel testified that he followed the CI as the CI drove to 615 Booker T. Washington, although Vogel did not go to the home. Vogel further testified that the video depicts a person sitting in the car with the CI and that person was later identified as Williams. Vogel also identified the defendant as the person on the video seen exiting the home at 615 Booker T. Washington. Officer Vogel also testified that he was familiar with the neighborhood near Booker T. Washington Junior High School and that the house at 615 Booker T. Washington, where the indictment alleged the transaction occurred, was within 1000 feet of a drug-free zone, namely a school.

According to Vogel, when the CI returned to the police station, the officers gathered the recording device and drugs, searched the CI and the vehicle, weighed and field-tested the drugs, and the drugs tested positive as cocaine and weighed less than a gram. Vogel stated that after the police log the drugs, the drugs are secured in an evidence locker and subsequently go to DPS to be tested.

On cross-examination, Vogel agreed that the CI had a criminal record. Vogel also agreed that what occurred at 615 Booker T. Washington was not visible to the naked eye or with binoculars. Vogel agreed that Defense Exhibits 1 and 2 were photos that accurately depicted what was on the video, and he agreed that the exhibits depicted four persons that were present, including the CI. Vogel agreed that he had never spoken with Williams, did not know what Williams's voice sounded like, and could not identify who was speaking in the recording by the voices on the recording. Vogel agreed that when he testified on direct examination he stated he watched the video in real time but in his affidavit he stated that he watched the recorded events "in almost real time[.]" Vogel also agreed that Williams's driver's license gives his address as 12 Littlefield Lane in Willis, Texas, although on direct examination he testified that Williams's address was 615 Booker T. Washington. Vogel testified on direct examination that while watching the recording, he observed Williams exiting the house at 615 Booker T. Washington.

Testimony of Cheryl Szkudlarek

Cheryl Szkudlarek testified that she is a forensic scientist with the Texas Department of Public Safety Crime Lab in Houston, and that she has a bachelor's degree in chemistry and a master's degree in forensic science. Szkudlarek identified her initials and dates on State's Exhibit 4, which she explained was submitted to the lab on June 21, 2016 and which she opened on July 8, 2016. Szkudlarek agreed that she performed an analysis on the substance contained in State's Exhibit 4 and that the substance weighed .33 grams and contains cocaine. Szkudlarek identified State's Exhibit 5 as the lab report she prepared, which contains the findings of the controlled substance analysis that she performed on State's Exhibit 4. Szkudlarek agreed that State's Exhibit 5 reflects that the substance the Crime Lab tested was submitted to the Crime Lab by the Conroe Police Department and it includes a Conroe Police Department case number and the defendant's name. State's Exhibit 5 was admitted into evidence.

Testimony of Investigator John Stephenson

John Stephenson testified that he is the assistant chief of investigators for the Montgomery County District Attorney's Office. Stephenson testified that the prosecution asked him to get information on a person named Edwin Cotton and that he was able to locate some personal information about Cotton. According to

5

Stephenson, the in-house computer systems of the Montgomery County Sheriff's Office, the Conroe Police Department, and the Texas Department of Public Safety listed Cotton's address as 615 Booker T. Washington in Conroe.

Further Matters at Trial

After the State rested, the defense moved for a directed verdict, which the trial court denied. The defense did not call any witnesses and rested. (3RR140) After closing arguments, the trial court submitted the case to the jury and the jury found Williams guilty. The jury also found that the offense occurred in a drug-free zone. Williams elected to have the trial court decide punishment. At the punishment hearing, Williams pleaded "not true" to the three enhancements. The trial court found all three enhancements true and assessed punishment at forty-five years' confinement.[2] Following trial, Williams filed a motion for new trial, arguing that the evidence was legally insufficient for a jury to conclude beyond a reasonable doubt that Williams knowingly possessed a controlled substance with the intent to deliver. The motion for new trial was overruled by operation of law, and Williams appealed.

---

[2] Prior to the punishment hearing, the trial court held a hearing on Williams's motion to reinstate a plea bargain, which the court denied. On appeal, Appellant does not challenge the trial court's denial of his motion to reinstate.

Issue on Appeal

On appeal, Williams contends that the evidence was legally and factually "insufficient [] for the court to conclude beyond a reasonable doubt that Defendant knowingly possessed with intent to deliver a controlled substance."

Applicable Law

In reviewing the legal and factual sufficiency of the evidence to determine whether the State proved the elements of the offense beyond a reasonable doubt, we apply the *Jackson v. Virginia* standard. *Brooks v. State*, 323 S.W.3d 893, 894-95, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under that standard, a reviewing court must consider all the evidence in the light most favorable to the verdict and determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Id.* at 902; *see also Jackson*, 443 U.S. at 319. "A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony." *Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018). As the trier of fact, the jury is the sole judge of the weight and credibility of the witnesses' testimony, and on appeal we must give deference to the jury's determinations. *Brooks*, 323 S.W.3d at 899, 905-06. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Id.* at 899 n.13 (citing *Jackson*, 443 U.S. at 319).

On appeal, we serve only to ensure the jury reached a rational verdict, and we may not substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In our review, we consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The elements for the offense of possession of a controlled substance with intent to deliver are that the defendant: (1) possessed a controlled substance; (2) with the intent to deliver the controlled substance to another; and (3) knew that the substance in his possession was a controlled substance. *See* Tex. Health & Safety Code Ann. § 481.112(a); *Nhem v. State*, 129 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Possession is defined as "actual care, custody, control, or management." Tex. Penal Code Ann. § 1.07(a)(39) (West Supp. 2018). To prove unlawful possession of a controlled substance, the State must prove (1) that the accused exercised actual care, custody, control, or management over the substance and (2) that the accused knew the substance was a controlled substance. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *overruled in part on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015); *De La Torre v. State*, 546 S.W.3d 420, 423-24 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

In cases where a defendant does not have exclusive possession of the place where the controlled substance is discovered, additional facts beyond mere presence must link him to the illegal substance. *Tate v. State*, 500 S.W.3d 410, 413-14 (Tex. Crim. App. 2016). The State is not required to prove exclusive possession of the contraband as control may be jointly exercised by more than one person. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985). The evidence must show the defendant's connection with the drug was "'more than just fortuitous[,]'" and this is what is referred to as the "'affirmative links rule.'" *Poindexter*, 153 S.W.3d at 406; *De La Torre*, 546 S.W.3d at 424; *see also Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006). An affirmative link can be established through any one of or a combination of several nonexclusive factors: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place

where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162, n.12. The State need not prove all these links, and it is not the number of factors present that is dispositive. *Id.* at 162; *De La Torre*, 546 S.W.3d at 424-25.

Circumstantial evidence may be sufficient to prove the chain-of-custody. *See Cain v. State*, 501 S.W.3d 172, 175 (Tex. App.—Texarkana 2016, no pet.); *Watson v. State*, 421 S.W.3d 186, 190 (Tex. App.—San Antonio 2013, pet. ref'd). "Without evidence of tampering, most questions concerning care and custody of a substance go to the weight attached, not the admissibility, of the evidence." *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997); *see Martinez v. State*, 186 S.W.3d 59, 62 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *Gallegos v. State*, 776 S.W.2d 312, 315 (Tex. App.—Houston [1st Dist.] 1989, no pet.). When the State shows the beginning and the end of a chain of custody, any intermediate gaps go to the weight rather than the admissibility of the evidence, particularly if the chain of custody ends at a laboratory. *See Martinez*, 186 S.W.3d at 62; *Gallegos*, 776 S.W.2d at 315-16.

Analysis

Williams argues that the evidence is not legally or factually sufficient to support his conviction. According to Williams, the evidence was insufficient for the jury to find Williams guilty beyond a reasonable doubt because: (1) the State elected to rely solely on the testimony of Officer Vogel and the contents of the video recording, and Officer Vogel was not physically present at the location where the alleged drug transaction between Williams and the CI occurred; (2) the State's evidence fails to show beyond a reasonable doubt that Williams was present at the alleged drug transaction, that he possessed drugs at any time, or that he "participated in a hand to hand transaction[]"; (3) Williams was not in exclusive control of the scene where the alleged drug transaction occurred and the State failed to present any evidence that Williams had knowledge of and control over any contraband; and (4) the State failed to present any testimony by Officer Vogel that the evidence recovered by the officer from the CI was the same evidence tested by DPS on July 15, 2016, and the State failed to present credible and reliable evidence concerning the identity and chain of custody of the evidence seized and subsequently tested. We disagree.

Officer Vogel testified that he searched the CI on June 17, 2016 prior to the controlled buy, that he set up the CI with recording equipment, and that he watched

11

the "controlled buy" occur "in almost real time[.]" Vogel also testified that the CI returned from the "controlled buy" with less than a gram of cocaine. The recording was entered into evidence as State's Exhibit 3 and was published to the jury, and Vogel identified Williams as a person seen exiting 615 Booker T. Washington. Vogel also agreed that the person seen in the vehicle with the CI was Williams. Based on the record, the evidence established affirmative links from which a rational jury could have concluded that Williams possessed the cocaine with intent to deliver the cocaine to the CI. *See Poindexter*, 153 S.W.3d at 406.

Officer Vogel testified that he then weighed and field-tested the contraband the CI obtained from Williams and the contraband tested positive for cocaine. Vogel also testified that after he tested it he logged the contraband into the computer and then it would have been taken to an offsite location where the evidence would have been secured in an evidence locker. Vogel testified that after contraband is logged into evidence, it would then be sent to DPS for testing.

Cheryl Szkudlarek testified that the lab received State's Exhibit 4 (an envelope with a substance in it) on June 21, 2016 and she opened the envelope on July 8, 2016. She further testified that the envelope was marked with a Conroe Police Department case number and Williams's name, that her analysis determined the substance inside the envelope was .33 grams of cocaine, and that her report which

12

she prepared after testing the substance gives the Conroe Police Department case number and names Williams as the suspect in the case. A rational jury could have concluded that the State provided evidence of the beginning and end of the chain of custody and that there was no evidence of tampering. *See Martinez*, 186 S.W.3d at 62; *Gallegos*, 776 S.W.2d at 315-16. Even assuming without deciding that there was a gap in time between when Vogel logged the evidence into the computer and into the evidence location and when it was tested by the laboratory, that would merely go to the weight of the evidence not its admissibility. *See Martinez*, 186 S.W.3d at 62; *Gallegos*, 776 S.W.2d at 315-16.

Viewing the evidence in the light most favorable to the verdict, we conclude that the combined and cumulative force of all the evidence would allow a rational jury to conclude beyond a reasonable doubt that Williams had possession of the cocaine with intent to deliver it to the CI, and the evidence was legally sufficient to support Williams's conviction for the charged offense. *See Evans*, 202 S.W.3d at 162; *see also Brooks*, 323 S.W.3d at 902 n.19. We overrule Williams's issue.

### Reformation of Judgment

We note that the section of the judgment entitled "Statute for Offense[]" recites "481.112 Penal Code" whereas the jury charge tracks the language of section 481.112 of the Texas Health and Safety Code. *See* Tex. Health & Safety Code Ann.

13

§ 481.112 ("Offense: Manufacture or Delivery of Substance in Penalty Group 1").

This Court has the authority to reform the trial court's judgment to correct clerical errors. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993). We therefore reform the judgment to delete the reference to "Penal Code" and to substitute "Health & Safety Code[.]"

Having overruled Appellant's issue, we affirm the judgment of the trial court as reformed.

AFFIRMED AS REFORMED.

_____
LEANNE JOHNSON
Justice

Submitted on November 5, 2018
Opinion Delivered January 30, 2019
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.